COMMONWEALTH *vs.* CERTAIN INTOXICATING LIQUORS,
John Dewey & another, claimants.

Hampshire. September 14. — October 2, 1874. WELLS & MORTON, JJ., absent.

A complaint under the St. of 1869, *c.* 415 § 45, averred that certain intoxicating liquors were kept and deposited by A. "in a certain dwelling-house building"

(the situation of which was described) "occupied by the said" A. "as a dwelling and premises." *Held*, a sufficient averment that the liquors were kept by A. in his dwelling-house.

A complaint under the St. of 1869, *c.* 415, §§ 44, 45, averring that certain intoxicating liquors are kept and deposited in a dwelling-house, a place of common resort being kept therein, and which charges that intoxicating liquor had been sold in said house by the occupant thereof within a month previous, is sufficient, without an averment that the occupant of the house is the keeper of the place of common resort.

A complaint under the St. of 1869, *c.* 415, § 45, described the building in which intoxicating liquors were alleged to be kept for sale in violation of law as "a certain dwelling-house building situate on Cherry Street, so called, in N., on the northerly side of said street, the same being the second house from Market Street, on said Cherry Street, and occupied by A. as a dwelling and premises." The warrant which issued on the complaint described the building to be searched as "a certain frame building situate on Cherry Street, so called, in N., on the northerly side of said street, and is the second house easterly from Market Street, in said Cherry Street, and occupied by A. as a dwelling and premises." *Held*, that there was no variance.

On a complaint under the St. of 1869, *c.* 415, §§ 44, 45, alleging that intoxicating liquors are kept in a dwelling-house and intended for unlawful sale, it is not necessary to prove that sales were intended to be made in the dwelling-house ; it is sufficient to show that it was in effect a magazine or warehouse where liquors were stored which were intended to be sold at a saloon in the immediate neighborhood.

Evidence that three casks containing liquors were found in the cellar of a dwelling-house occupied by A. ; that A. kept a saloon an eighth of a mile distant, in which there was a bar or counter ; that he had a few weeks before pleaded guilty to a complaint dated and sworn to April 1, 1874, alleging a single sale of intoxicating liquors in the saloon May 4, 1874 ; that shortly before the seizure a boy brought liquors to the saloon, similar to those found in A.'s cellar ; that the boy came to the saloon by a street which led from said dwelling-house to the saloon, and that A. admitted that he knew the boy ; is competent evidence to warrant a jury in finding that the liquors in the cellar were intended for sale in violation of law, although the street on which the boy was first seen near the saloon was also the direct route from two other streets as well as that from the dwelling-house.

COMPLAINT on the St. of 1869, *c.* 415, §§ 44, 45, averring that certain intoxicating liquors were, on May 19, 1874, kept and deposited by John Dewey "in a certain dwelling-house building situate on Cherry Street, so called, in Northampton, on the northerly side of said street, the same being the second house from Market Street, on said Cherry Street, and occupied by the said Dewey as a dwelling and premises, and a place of common resort is kept therein, and which liquors are intended by said Dewey" for sale in violation of law. The warrant which issued upon this complaint described the premises where the liquors

were alleged to be kept as " a certain frame building situate on Cherry Street, so called, in Northampton, on the northerly side of said street, and is the second house easterly from Market Street, in said Cherry Street, and occupied by the said Dewey as a dwelling and premises, and a place of common resort is kept therein." The complaint also recited that the complainant had reason to believe, and did believe, that intoxicating liquors had been sold in said house, by the occupant of said house, and with the consent and permission of the occupant of said house, contrary to law, within one month next before the day on which the complaint was made.

John Dewey and Patrick H. Dewey appeared and claimed the liquors seized under said complaint.

In the Superior Court, before *Wilkinson*, J., the claimants filed a motion to quash on the following grounds: 1. " That said warrant does not aver that the place where said liquors were kept and deposited was a dwelling-house.  2. That the complaint does not allege that the place of common resort was kept by said John Dewey.  3. That the complaint and warrant do not agree in describing the situation of the house on Cherry Street, where said liquors were alleged to be kept and deposited." The motion to quash was overruled.

At the trial Elijah N. Sampson, a state constable, was the only government witness; his evidence tended to show that a portion of the liquors seized were found in the cellar of the dwelling-house occupied by John Dewey on Cherry Street, in Northampton; that the liquors found in said cellar were in three casks, one forty gallon cask, containing thirty gallons of imported brandy; one forty gallon cask, containing twenty-eight gallons of whiskey; and one ten gallon keg containing two gallons of gin, the two latter casks bore stamps dated in March, 1874.

There was no evidence offered by the government tending to show that there was a place of common resort kept in the dwelling-house of John Dewey. And the claimants upon this evidence, it being all the evidence on this point, asked the court to rule that the seizure proceedings could not be maintained, if the liquors were merely found in the cellar of John Dewey's dwelling-house, and if there was no place of common resort kept therein; but the presiding judge refused so to rule, and the claimants excepted.

Sampson also testified that on the day of the seizure and before the seizure, he was standing on Main Street in Northampton, and saw a boy coming down Market Street with a small valise in his hand; that the boy, when he reached Main Street, took the sidewalk on the northerly side as far as the First National Bank, and then crossed over to a billiard saloon on the corner of Main and Pleasant streets, kept by the claimants, and was about to enter said saloon, but seeing Sampson he stopped, when Sampson said to him, "As you are going in you might as well go in," and that he accompanied him in, and asked John Dewey if he knew him; that Dewey said he did; that said Sampson then overhauled his valise and found therein bottles of the same kinds of liquors as were in the casks found in the cellar on the premises searched. Sampson testified that the place where he first saw the boy on Market Street was on the direct route from John Dewey's dwelling-house to the billiard saloon above mentioned, but was an eighth of a mile from said dwelling-house, and that it was also on the direct route of a person coming from Union Street and North Street to said billiard saloon. The claimants objected that this evidence was irrelevant and inadmissible to establish any of the allegations of the complaint, but the court admitted it, and the claimants excepted. Sampson being further inquired of by the government testified, that some weeks prior to the date of the seizure in question, he was in the saloon of John and Patrick Dewey, and found in a room in the rear of the saloon a bar or counter, and found John Dewey in the act of selling liquor to one Pittsinger, and that Sampson then complained of Dewey for making said sale, and that he pleaded guilty to said charge before a magistrate. John Dewey objected that this could only be shown by the record, and that it was immaterial, irrelevant and inadmissible evidence if established by the record. The court then permitted the government to produce the record, and it showed a complaint dated and sworn to, April 1, 1874, in which it was alleged that the sale to said Pittsinger was May 4, 1874, and the claimants again objected to the admission of such record, but it was admitted, and the magistrate before whom the case was returned, testified against the claimants' objection, that John Dewey, when arraigned on said complaint said he was guilty, and that he paid a fine and costs for said offence. The claimants excepted to the admission of all the evidence.

The presiding judge, in charging the jury, told them that John Dewey might have been convicted on the complaint in question, notwithstanding the apparent discrepancy in dates between the complaint and jurat, and that they might consider this conviction as bearing on the question of his intent to sell the liquors seized in violation of law. There was no other evidence in the case.

The claimants asked the court to rule that upon the whole evidence the government had failed to maintain the material allegations of the complaint. The court declined so to rule, and left it to the jury to say whether the liquors found in the cellar of the dwelling-house were kept for the purpose of being sold, in the Commonwealth, in violation of the law. The jury returned a verdict that the liquors were kept and deposited and intended for sale as alleged in the complaint; and the claimants alleged exceptions.

*C. Delano*, for the claimants.

*C. R. Train*, Attorney General, for the Commonwealth.

AMES, J. We see no cause for sustaining the motion to quash. The complaint avers that the liquors were kept in a " dwelling-house building" (the situation of which is described) occupied by Dewey as a " dwelling-house and premises." Though somewhat inartificially expressed, the obvious meaning is that the liquors were kept by him in his dwelling-house. There was no occasion to allege that the place of common resort was kept by him. The charge that he had sold liquors at the house within a month previous was sufficient to justify the issuing of the warrant. *Commonwealth* v. *Intoxicating Liquors*, 110 Mass. 182. *Commonwealth* v. *Intoxicating Liquors*, 108 Mass. 19. There is no material variance between the complaint and warrant as to the situation of the house. The house is fully described and identified in the complaint, and although the warrant adds something unnecessarily to the description, it is not at all inconsistent with that contained in the complaint.

We have already had occasion to rule, that it is not necessary to prove that sales had been made or were intended to be made at the dwelling-house. *Commonwealth* v. *Intoxicating Liquors*, *ante*, 24. If the claimant's dwelling-house was in effect a magazine or warehouse where liquors were stored, which he intended to sell at a saloon in the immediate neighborhood, it would be sufficient

to maintain the complaint. It is impossib.e. to say that the evi‑
dence reported (especially so much as relates to the boy with the
valise and the bottles) had no tendency of that kind. The de‑
fendant's plea of guilty on a charge for a single sale some weeks
previously, coupled with proof that the sale was at his saloon, and
that he had continued to keep the same saloon ever since, and was
at the time of the seizure found in the act of receiving a supply of
liquors, was competent evidence against him. *Commonwealth* v.
*Hazeltine,* 108 Mass. 479. *Commonwealth* v. *Callahan,* Ib. 421.
*Commonwealth* v. *Ayers,* 115 Mass. 137. The discrepancy of
date was immaterial. *Exceptions overruled.*