## COMMONWEALTH *vs.* JAMES McCLUSKEY.

Bristol. Oct. 23. — Nov. 27, 1877. LORD & SOULE, JJ., absent.

No exception lies to the refusal of a presiding judge to order separate trials upon an indictment containing two counts, each charging the keeping and maintaining of a distinct tenement for the illegal sale and illegal keeping of intoxicating liquors.

Evidence that two houses, in the first of which the defendant kept a saloon for the sale of intoxicating liquors, were in close proximity to each other; that the yard between the two was common to both, there being no division fence; that the

porch of the second house, which opened into this yard, was only a few feet from the back door of the saloon ; that there was a gate in the rear of the second house, used in common by the occupants of both houses, through which customers found their way to the saloon ; that the defendant had often been seen to drive to this gate, and to carry jugs and demijohns through it into the yard ; that two searches for liquors had been made, during the time in question, in the second house, at each of which liquors were found in jugs, bottles and demijohns, once in a locked closet in the porch and once in the cellar ; that measures, tunnels and pumps, which had been recently used, were also found in the porch and cellar ; that the owner and the occupant of the first floor of the second house had no knowledge of the liquors so found, and did not know that any were there ; that the saloon, although fitted up and much used and resorted to for the illegal sale of intoxicating liquors, had many times been searched during the time in question and no liquors were found, except that on two occasions a very small quantity was found in bottles on the person of the bar-tender ; and that in the saloon were found tumblers, a drainer and a number of pint and quart flasks : will warrant a jury in finding that the second house was kept for the unlawful sale or unlawful keeping of intoxicating liquors.

On an indictment on the Gen. Sts. c. 87, § 6, charging that a house was kept for the unlawful sale or unlawful keeping of intoxicating liquors, the same "being then and there a common nuisance," it is sufficient to prove that the liquors were kept in the house for sale, and the fact that they were so kept to be sold in another place is immaterial.

INDICTMENT on the Gen. Sts. c. 87, §§ 6, 7, in two counts, each count alleging that the defendant on January 1, 1877, and on divers other days between that day and the day of finding the indictment, did keep and maintain a certain tenement in New Bedford, for the illegal sale and illegal keeping of intoxicating liquors, said tenement being then and there a common nuisance.

At the trial in the Superior Court, before *Brigham*, C. J., it appeared that the two counts were for separate offences, and referred to separate buildings, and the defendant requested the judge to direct that he be tried separately upon each count. But the judge directed that the trial proceed upon both counts together.

It appeared in evidence that the tenement referred to in the first count was the lower floor of a building No. 4 Pearl Street, which was fitted up as a saloon for the sale of liquor, with a bar and other paraphernalia of the trade ; and that this saloon, so fitted up, was used and much resorted to for the illegal sale and keeping of intoxicating liquors, the defendant being concerned in keeping the same during the time covered by the indictment.

The tenement referred to in the second count was a building on the corner of Third Street and Pearl Street, and the evidence

on that count was as follows : The building itself was a house occupied by three families, and was on the same side of Pearl Street as, and the next house east from, No. 4. A porch extended westerly from the corner house to within a few feet of No. 4 ; the door of the porch being about twelve or fifteen feet distant from the back door of No. 4, which back door opened directly into the yard from the bar-room.

There was no fence between the two buildings, the yard was common to both, and there was no fence upon Pearl Street. On the Third Street side was a gate in the rear of the corner house, which gate was used in common by the occupants of both houses. Two witnesses testified to a sale of liquor in No. 4, which they entered by this gate on Third Street through this back door. There were two seizures of liquors made, during the time covered by the indictment, by the police of the city, upon searchwarrants, in the corner building. The first was of a considerable quantity of various kinds of liquors contained in jugs, bottles and demijohns from a closet in the porch ; and the other, some time afterwards, of a variety of liquors, contained in six jugs, from a room in the cellar. The door leading from the yard into the porch was on each occasion found unlocked ; but the closet was locked and was broken open by the officers. The cellar was under the main building and was reached by a door from the porch, which was not locked, but the room in the cellar was locked and was broken open by the officers. In the room in the cellar were also found a hand pump, and half pint, pint and quart measures, and tunnels, which had been recently used. The porch contained a pump and implements for washing, such as a bench and tubs, &c., and nothing more ; and the closet, which was about four feet square in a corner of this porch, contained nothing but the liquors found. The porch communicated with the cellar, with the main part of the house, and with the second story, but not with the third story.

One France, who owned the building and lived in the second story, testified that she let the first floor to one Mathews, and that all the families in the house had the privilege of the porch for water and for washing ; and that she knew nothing whatever of any liquor found in the porch ; and did not know any was there ; she was not inquired of relative to the cellar or the

liquor found there.    Mathews testified that he hired the first floor with the privilege of the porch, and the privilege of using a room for storage of wood and coal in the cellar when the liquors were found; that he had such a room kept locked, having fuel in it, but no liquors; that the room in the cellar in which the liquors were found had no fuel in it, and was locked, and that it was not the same room used by him; that the porch was never locked, and was common to the whole house, and the pump in it was much visited by all the neighbors; and that he knew nothing whatever of any liquors found in the porch or in the cellar, and did not know any were there.    No other occupant of the house was called to testify in relation to the matter.    Several officers testified that they had seen the defendant drive up to the gate on Third Street many times, and take from the wagon and carry into the gate jugs, and sometimes demijohns, but whether he carried them into the corner house or into house No. 4, they could not say in any case, the back doors of the two houses not being visible to them.

There was no evidence that the defendant, or any one for him, had ever been in the corner building or porch; or had ever been seen going in or coming out from there; but all the witnesses for the government testified that they had never seen him in the building nor going in nor coming out from the same, except as they had seen him going in and coming out of the gate.    It appeared that the defendant lived and boarded with one Smith, who occupied the upper story of the building No. 4 Pearl Street.

There was evidence that officers had many times, during the period covered by the indictment, searched the saloon in building No. 4, but with the exception of two occasions they found no intoxicating liquors whatever; that on those two occasions they only found a very small quantity in bottles on the person of the bar-tender; and that on said several searches, tumblers of different kinds, a tumbler drainer, and in a closet behind the bar a number of new pint and quart glass flasks were found. No search was made in the upper story of No. 4 excepting once, and then no liquor was found.

The above was all the evidence in relation to the second count and the defendant asked the judge to rule that there was no evidence upon which the jury could be authorized to convict the defendant upon that count.

The defendant also requested the judge to rule that the evidence in relation to the finding of liquors in the corner building was not admissible in support of the first count. The attorney for the government contended, upon all the evidence in the case, that the bar-room in No. 4 Pearl Street was used for the sale of liquors, which were kept stored in the locked apartments in the corner house, and that the liquors found in those apartments were intended for the supply of the room in No. 4.

The judge refused both requests, and ruled that there was evidence upon which the defendant could be convicted upon the second count; that the evidence in relation to the finding of the liquors in the corner building was admissible in support of the first count, and further instructed the jury as follows:

"If the defendant, within the time alleged in the indictment, kept tenements of one or more rooms in each of two buildings, independent of and detached from each other, evidence that in the tenement in one of these buildings was kept a store of intoxicating liquors, from which such liquors were supplied to his tenement in the other of these buildings, which was used by him for the illegal sale or the illegal keeping of the liquors thus supplied, may be considered by the jury to explain the fact that upon searching the tenement thus used no intoxicating liquors were found there, or a smaller quantity of intoxicating liquors was found there, in connection with the fixtures and arrangements of a bar-room, than might be reasonably expected in a place used for the illegal sale or illegal keeping of intoxicating liquors. If the defendant during the time covered by the indictment kept tenements of one or more rooms in each of two buildings, independent of and detached from one another, and one of said tenements was used for the illegal keeping and for the illegal sale of intoxicating liquors kept for illegal sale there, or kept for supplying liquor to, and for illegal sale and illegal keeping in a bar-room in the first named tenement, in which a very small quantity of intoxicating liquors were usually kept, the defendant may be convicted upon the two counts of the indictment, for keeping each of the tenements, which such counts severally describe."

The jury returned a verdict of guilty upon both counts; and the defendant alleged exceptions.

*H. M. Knowlton,* for the defendant.

*W. C. Loring,* Assistant Attorney General, for the Common·
wealth.

AMES, J.   It was proved at the trial that the defendant kept
a saloon for the sale of intoxicating liquors in the building·de-
scribed as No. 4, and it is conceded that he was propei ly con-
victed of the charge contained in the first count.   To convict
him upon the second, it was necessary to prove that the liquors
found in the other building were kept by him for illegal sale.
In that case it would be immaterial that they were not intended
to be sold in the building where they were found.   *Common-
wealth* v. *Intoxicating Liquors,* 116 Mass. 24.   *Commonwealth* v.
*Intoxicating Liquors,* 116 Mass. 27.   Both the place of deposit
and the place of actual sale would be embraced in the descrip-
tion of common nuisances, as given in Gen. Sts. *c.* 87, § 6.

No exception lies to the refusal to order a separate trial upon
each count.   It was competent for the judge to confine the trial
to·a single count, if he thought proper, but this is left entirely
to his discretion.   *Carlton* v. *Commonwealth,* 5 Met. 532.   *Com-
monwealth* v. *Cain,* 102 Mass. 487.

With regard to the sufficiency of the evidence applicable to
the·second count, it appeared that the two buildings were in
close·proximity with each other ; that the yard between the two
was common to both, there being no division fence; and that the
porch·which opened into this yard was only a few feet from the
oack door of the saloon.   There was a gate in the rear of the
corner house, used in common by the occupants of both houses,
and ·through which customers found their way to the saloon.
The defendant had often been seen to drive to this gate, and to
carry jugs and demijohns through it and into the ,yard.   Two
searches for liquors had been made, during the time covered by
the indictment, in the corner house, and each time liquors were
found, once in a locked closet in the porch and once in the cel-
lar, contained in jugs, bottles and demijohns.   Measures, tunnels
and pumps were also found, which had been recently used, in
the porch and the cellar.   The owner of the corner building, and
the occupant of the first floor, were called as witnesses, and tes-
tified that they had no knowledge of the liquors so found, and
did not know that any were there.   Also there was evidence

that the saloon, although fitted up and much used and resorted to for the illegal sale of intoxicating liquors, had many times been searched by the police during the time covered by the indictment, without finding any such liquors whatever, except that on two occasions a very small quantity had been found, in bottles, on the person of the bar-tender. At the saloon they found tumblers, a drainer and a number of pint and quart flasks, but usually no liquors, and never what could be called a stock or supply of liquors, for such an establishment, " much used and resorted to." Under these circumstances, and in the absence of any explanation from the defendant, we cannot say that the jury might not have inferred that the jugs and demijohns found in the corner building, and containing intoxicating liquors, were those which the defendant had been seen to carry through the gate, and that they were kept by him in that building to supply his saloon. We therefore see no error in the rulings and instructions of the presiding judge.          *Exceptions overruled.*