COMMONWEALTH *vs.* THOMAS M. LUCAS.

Plymouth.    November 28, 1892. — January 6, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Indictment for Polygamy — Copy of Record of Divorce — Identity — Cohabitation.*

An indictment for polygamy, under the Pub. Sts. c. 207, §§ 4, 5, alleged that the defendant, at Portland, Maine, unlawfully married C. B. T., being the husband of M. A. B., who was alive, and from whom he had not been legally divorced.  The defendant offered in evidence what purported to be a copy of the record of the Supreme Judicial Court of Maine, at a term held at Auburn on the third Tuesday of September, 1890, in a cause of divorce in which Thomas M. Lucas of Auburn, husband of Mary A. Lucas, was the libellant and Mary A. Lucas was the libellee, the libel alleging that they were married " at Brockton, in the State of Mass., May the 6th, 1876, by Rev. F. D.," and it appearing that the libellant gave notice, pursuant to the order of court, to Mary A. Lucas, who did not appear and was defaulted, and the court granted a divorce for desertion. The presiding justice rejected the copy on the ground that there was no evidence " that the defendant was the same Thomas M. Lucas named in said record."  The exceptions recited that " Mary A. Lucas, formerly M. A. B.," had testified " that on the 10th day of May, in the year 1876, she was united in marriage with the defendant, whom she saw in court and identified, at Brockton, . . . by the Rev. F. D.," and that " he deserted her in the year 1881."  The exceptions also recited that there was evidence " tending to show that in the month of February, A. D. 1890, and at other times, the defendant was residing in the State of Maine, and in the town of Auburn."  *Held*, that the identity of the names, and the close

resemblance of the other facts found in the record of the Maine court, and in the testimony at the trial, in the present case, afforded abundant evidence that the defendant was the same person as the libellant in the record.

The words to continue " to cohabit with such second husband or wife," as used in the Pub. Sts. c. 207, § 4, mean to continue to live or to dwell together as husband and wife ordinarily do, but, according to the weight of authority, do not neces-
sarily imply actual sexual intercourse.

FIELD, C. J.   The defendant was indicted for polygamy under Pub. Sts. c. 207, §§ 4, 5.   The first part of the indictment is in substance that the defendant, at Portland in the State of Maine, unlawfully married one Carrie B. Tracy, being then the lawful husband of one Mary A. Burk, who was alive, and from whom he had not been legally divorced.   The defendant offered in evidence what purported to be a copy of the record of the Supreme Judicial Court of the State of Maine, at a term held at Auburn, within the county of Androscoggin, on the third Tuesday of September, A. D. 1890, in a cause of divorce in which Thomas M. Lucas of Auburn, in said county, husband of Mary A. Lucas, was the libellant, and the said Mary A. Lucas was the libellee, in which it appears that the libel alleged that they were married " at Brockton in the State of Mass., May the 6th, 1876, by Rev. Father Doherty."   It also appears therein that the libellant gave " notice of his said libel to the said Mary A. Lucas, pursuant to the order of court thereon, . . . but the said Mary A. Lucas, though solemnly called to come into court, does not appear, but makes default "; whereupon the court found that the material facts alleged in the libel had been proved to its satisfaction, and granted a divorce from the bonds of matrimony, " for the cause of utter desertion continued for more than three years, as set forth in the libel."   The copy purports to be attested by the clerk of that court, but it does not appear by the exceptions whether the seal of the court was annexed, although the exceptions recite that it was duly authenticated.   See Pub. Sts. c. 169, § 67.   This copy was rejected by the court, on the ground that there was no evidence " that the defendant was the same Thomas M. Lucas named in said record."   The exceptions recite that " Mary A. Lucas, formerly Mary A. Burk," had previously been called as a witness by the Commonwealth, and had testified, " that on the 10th day of May, in the year 1876, she was united in marriage with the defendant, whom she saw in

court and identified, at Brockton, in said county [Plymouth], by the Reverend Father Doherty," and that "he deserted her in the year 1881." This testimony accords with the allegations contained in the record of the Maine court, except that there it is alleged that they were married on May 6, 1876, and that she deserted him on July 20, 1881. The exceptions also recite that there was evidence "tending to show that in the month of February, A. D. 1890, and at other times, the defendant was residing in the State of Maine, and in the town of Auburn." The identity of the names, and the close resemblance of the other facts found in the record of the Maine court, and in the testimony at the trial in the present case, afford abundant evidence that the defendant is the same person as the libellant in the record, and for this reason the exceptions must be sustained.

The only other exception which has been argued by the counsel for the defendant relates to his request that the court rule "that the word 'cohabit,' in the statutes of this Commonwealth relating to the crime of polygamy, means more and something different from the living or residing together of two parties in the same house; it means such a continuous living or associating together as is common and usual between husband and wife, and would warrant a jury in the belief that they had the sexual relations with each other that husband and wife ordinarily have." The court refused this request, and ruled "that the government need not prove actual sexual relations between the parties; that it would be enough if they lived together openly, and defendant held himself and said Carrie B. out as husband and wife, and that the word 'cohabit' in the statute did not necessarily imply actual sexual relations." The exceptions recite that said Carrie B. Lucas testified "that after she and the defendant came to this Commonwealth no act of sexual intercourse ever took place between her and him in said county of Plymouth."

Section 4 of Pub. Sts. c. 207, provides that "whoever, having a former husband or wife living, marries another person, or continues to cohabit with such second husband or wife in this State, shall, except in the cases mentioned in the following section, be deemed guilty of polygamy," etc. The indictment in the present case not only alleges that the defendant, at Portland, in the State

of Maine, married Carrie B. Tracy, having a former wife, Mary A. Burk, then living, but also alleges that the defendant " did cohabit and continue to cohabit with the said Carrie B. Tracy, his second wife, in this Commonwealth, to wit, at Brockton aforesaid, for a long space of time," etc. This last allegation is material, because the second marriage is alleged to have taken place in the State of Maine, and there would be no offence against the laws of this Commonwealth if the defendant had not cohabited with such " second wife in this Commonwealth." To continue " to cohabit with such second husband or wife," as the words are used in Pub. Sts. c. 207, § 4, must mean to continue to live or dwell together as husband and wife ordinarily do, but, according to the weight of authority, the words do not necessarily imply actual sexual intercourse. *Cannon* v. *United States*, 116 U. S. 55. *In re Snow*, 120 U. S. 274. *State* v. *Nadal*, 69 Iowa, 478. *Sullivan* v. *State*, 32 Ark. 187. *Bush* v. *State*, 37 Ark. 215. *Calef* v. *Calef*, 54 Maine, 365. *Commonwealth* v. *Calef*, 10 Mass. 153. *Southwick* v. *Southwick*, 97 Mass. 327. 1 Bish. Mar., Div. & Sep. § 1669 *et seq.*

Whether the evidence recited in the exceptions is sufficient to warrant the jury in finding that the defendant lived with Carrie B. Tracy as his wife is a question not before us.

*Exceptions sustained.*

*J. M. Day & H. Kingman*, for the defendant.

*G. C. Travis*, First Assistant Attorney General, for the Commonwealth.