COMMONWEALTH *vs.* HENRY E. BISHOP & another.

Suffolk.   November 25, 1895. — January 3, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & LATHROP, JJ.

*Abortion — Separate Trials — Accomplice — Evidence — Trial — Discretion of Judge — Finding of Fact — Dying Declarations.*

No exception lies to the refusal of the presiding judge to order separate trials upon an indictment containing two counts, each charging the commission of a similar offence upon different persons.

If, at the trial of a criminal case, the judge instructs the jury that a witness

for the government was an accomplice of the defendant, who had turned "state's evidence" to avoid the consequences of his part in the affair, and that they are to take these circumstances into consideration in weighing his testimony, the defendant is not entitled, at the close of the charge, to ask for fuller instructions as to the uncorroborated testimony of an accomplice, especially if the evidence is not wholly uncorroborated.

At the trial of an indictment for procuring an abortion upon A., a witness for the government, who was an accomplice of the defendant, testified that the defendant gave him a slip of paper to take to a certain address along with A.; and that he took it and delivered it to B., who was tried at the same time upon another indictment. B.'s counsel declined to ask her whether she admitted the receipt of the paper. *Held*, that the judge was warranted in admitting secondary evidence of its contents, which appeared to be directions in the case of A. after the operation.

At the trial of an indictment for procuring an abortion, a witness for the government, who was an accomplice of the defendant, testified that he went to a newspaper office and bought a paper, looked at the advertisements, and, in consequence of seeing an advertisement, went to the defendant's office, where he had testified before that he asked the defendant to procure the abortion. The defendant testified in his own behalf, and admitted that he advertised in that paper, and stated what he advertised, his advertisements being of such a nature that they might be understood to hold out that he was ready to do acts of the kind charged. *Held*, that the evidence of the witness was admissible.

If, at the trial of an indictment against A., another indictment against B., an alleged accomplice of A., is tried also, and, on every occasion when evidence is admitted against B. which is not admissible against A., the judge instructs the jury that it is not to be considered against A., such a course appears to be within the discretion of the judge, and A. is afforded no ground of exception.

When a witness has testified directly to a fact from the experience of his own senses, the extent to which he shall be allowed to testify to circumstances corroborative of the truth of what he has sworn rests in the discretion of the judge who tries the case.

The finding of the judge presiding at the trial of an indictment for procuring an abortion, that the woman operated upon, at the time she made certain declarations, offered in evidence as dying declarations under St. 1889, c. 100, believed that her end was near, and that her chance of recovery was slight, but that she then had some hope of recovery, cannot be revised by this court.

The existence of any expectation of recovery, however slight, makes dying declarations inadmissible.

HOLMES, J. This is an indictment for doing certain acts upon the body of one Petrene Matson, with intent to procure an abortion, in consequence of which the said Petrene died. The case is here on exceptions, which we will take up in the order in which they are discussed by the defendant.

1. The indictment contained two counts, the second count charging a similar offence upon another woman. The defendant moved for separate trials on the two counts, upon which motion the court suspended action, and, when the evidence of

the government was in, granted it. The exception on this point is not pressed, it being admitted to be a matter within the discre-- tion of the judge. *Commonwealth* v. *McCluskey*, 123 Mass. 401.

2. The court instructed the jury that one Carl F. Monk, the witness who furnished the principal evidence for the govern- ment, was an accomplice who had turned state's evidence to avoid the consequences of his part in the affair, and that they were to take the circumstances into consideration in weighing his testimony. At the close of the charge, the defendant asked for fuller instructions as to the uncorroborated testimony of an accomplice, which the court refused. It is settled that the court is not bound to advise the jury that generally it is unsafe to convict on such testimony, although courts sometimes do so. Advice upon the matter is in substance instructing the jury that there is a presumption of fact concerning the veracity of a certain class of witnesses. Although it is permissible, and in some cases may be desirable, to advise in the form above mentioned, the general rule under our practice is to leave such presumptions to the jury, and it is in the discretion of the pre- siding judge to follow the general rule rather than the ex- ception, if it seems best to him to do so. *Commonwealth* v. *Wilson*, 152 Mass. 12, 14. *Commonwealth* v. *Clune*, 162 Mass. 206, 214. See *Commonwealth* v. *Briant*, 142 Mass. 463, 464; *Graham* v. *Badger*, 164 Mass. 42, 47.

In this case the evidence was not wholly uncorroborated. The defendant admitted that he published advertisements which, to say the least, might be understood to hold out that he was ready to do acts of the kind charged, and it appeared by another witness that the defendant wanted to see him in order that the alleged accomplice should employ the defendant's law- yer, and that the defendant showed some anxiety to avoid the accomplice after the latter had been arrested. The defend- ant's conversations with the witness taken as a whole might have been interpreted also to admit by implication the witness's suggestion to the defendant, that he " thought he did a job for him," that is, for Monk, who was a brother of the witness, and to warrant the inference that the job referred to was the alleged crime.

3. Monk testified that the defendant Bishop gave him a slip

of paper to take to a certain address along with the said Petrene Matson, and that he took it there and delivered it to the defendant Cole. The counsel for Cole declined to ask his client whether she admitted the receipt of the alleged paper. The court thereupon admitted secondary evidence of its contents, which appeared to be directions in the case of Matson after the operation. If Cole had admitted that she had accepted such a paper without repudiating what it implied, the fact would have been very strong evidence against her. It is plain, therefore, that the judge was warranted in assuming that Cole refused to admit the receipt of the paper, or to produce it, irrespective of any question of the sufficiency of the notice to produce, and if he was of that opinion he was warranted in letting in the evidence as against Bishop.

4. Monk also testified that he went to the Boston Globe office and bought a Sunday Globe, looked at the advertisements, and in consequence of seeing an advertisement went to the defendant's office, where he had testified before that he asked the defendant to procure the abortion. This matter is one of those usual preliminaries which hardly could have been objected to if it had stood alone. If it was connected with the defendant's admission that he advertised in the Globe, and his statement of what he advertised, it fairly warranted the inference that the witness went to the defendant in pursuance of an offer of the latter to the public.

5. One Cole, an alleged accomplice of the defendant other than the above mentioned witness, was tried at the same time. On every occasion when evidence was admitted against Cole which was not admissible against this defendant, the court instructed the jury that it was not to be considered against this defendant. There is nothing to show that this course was not within the discretion of the court, or that its discretion was not exercised wisely. *Commonwealth* v. *Bingham*, 158 Mass. 169. There is no need, therefore, to consider particular objections to evidence admitted only against Cole, who, it may be mentioned, was acquitted by direction of the judge.

6. The defendant Bishop testified in his own behalf, and denied that he ever saw Petrene Matson. He stated that he never saw the witness Monk but once, when the latter applied

to him for treatment for a certain disease.   The court excluded
the evidence of what Monk applied for.   When a witness has
testified directly to a fact from the experience of his own senses,
the extent to which he shall be allowed to testify to circum-
stances corroborative of the truth of what he thus has sworn
must rest in the discretion of the judge who tries the case.
The bearing of the fact excluded, if it had any, was most
remote.   *Delano* v. *Smith Charities,* 138 Mass. 63, 64.   *Neal* v.
*Boston,* 160 Mass. 518, 522.

7. The dying declarations of Petrene Matson were offered by
the defendant, under St. 1889, c. 100.   The court found that
at the time of making them she believed her end was near, and
that her chance of recovery was slight, but that she then had
some hope of recovery.   Upon this finding of fact, the court
excluded the evidence.   We are asked to reconsider both the
finding and the ruling.   If the declarations had been admitted
we might consider, as in other cases, whether the evidence
was sufficient to warrant the findings on which the court pro-
ceeded, but we cannot revise the findings of fact.   *Common-
wealth* v. *Coe,* 115 Mass. 481, 505.   *Costelo* v. *Crowell,* 139 Mass.
588, 590.   This being so, when the declarations have been
rejected, even if the evidence of an unqualified expectation
of death were stronger than it was in this case, we could not
say that the judge was not warranted in disbelieving it.   It is
not argued that the defendant had a right to have the jury
revise the finding of the judge.   There is no doubt that the
proper course is for the judge to pass upon the fact in the first
instance.   If the evidence is let in, our practice allows the
party objecting to the evidence, who generally is the accused,
to reargue to the jury the preliminary question, as well as the
truth of the declaration.   But the whole purpose of the pre-
liminary action of the judge would be lost if in all cases the
evidence had to be laid before the jury so as to give them the
last word.   If the evidence is excluded, that is an end of
the matter unless some question of law is reserved.. See *Com-,
monwealth* v. *Preece,* 140 Mass. 276, 277 ; *Commonwealth* v.
*Robinson,* 146 Mass. 571, 580, 581 ; *Commonwealth* v. *Brewer,*
164 Mass. 577.   The only question for us is whether the judge
was right in excluding the evidence, assuming the facts to be

as found by him. It is settled that the existence of any expectation of recovery, however slight, makes dying declarations inadmissible. The finding that Matson " then had some hope of recovery" means that she thought she had some slight chance of life. Therefore the ruling was right. *Commonwealth v. Roberts*, 108 Mass. 296.

The foregoing are the only exceptions argued. No evidence was offered of any justification, but the defence consisted in a denial of the alleged acts.     *Exceptions overruled.*

*C. W. Rowley*, for the defendant Bishop.

*J. D. McLaughlin*, Second Assistant District Attorney, for the Commonwealth.