COMMONWEALTH *vs.* AUGUSTUS W. TURNER.

Suffolk.    March 20, 1916. — May 19, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Abortion. Evidence,* Dying declarations, Testimony of accomplice. *Practice, Criminal,* Conduct of trial, New trial, Exceptions.

At the trial of an indictment under R. L. c. 212, § 15, for using unlawful means with intent to procure the miscarriage of a woman, whose death resulted, a dying declaration made by the woman, offered in evidence under R. L. c. 175, § 65, is not rendered inadmissible by the fact that, at its close, with her right hand held raised, supported by one of her attending physicians, she repeated after another physician the words, "I say this realizing I am about to die and this is true, so help me God."

Contradictory statements, in a dying declaration by a woman under such circumstances, as to the name of the person responsible for her pregnancy affect the weight only and not the competency or admissibility of the declaration as evidence.

Where, at the trial of an indictment under R. L. c. 212, § 15, for using unlawful means with intent to procure the miscarriage of a woman, whose death resulted, there is evidence tending to show that the woman made a dying declaration stating in substance that she, being pregnant, went to the office of a certain physician on "Massachusetts Avenue, near Symphony Hall" in Boston, that he used certain means to procure a miscarriage, that he sent her to a Mrs. H at a certain address, where he came on two subsequent days and curetted her; and where there also is testimony by her family physician and other medical experts to the effect that the condition which resulted in her death was caused by an abortion being committed when she was three or four months pregnant, and other evidence tending to show that the defendant's name is the same as that of the physician named in the dying declaration, that he had an office as a physician on "Massachusetts Avenue, near Symphony Hall" in Boston, that there was no other physician of his name practicing medicine in Boston, and that the woman afterwards was treated at the house of Mrs. H at the address mentioned in the dying declaration by a physician who had an office on Massachusetts Avenue within five hundred and fifty feet of Symphony Hall, a verdict of guilty is warranted.

And if, at such trial, Mrs. H, called by the Commonwealth, testifies in substance that she received the woman at her house in response to a telephone message from one who called himself "Dr. Turner that you spoke to a few months ago," that later that Dr. Turner afterwards called on the woman, that he had offices at two addresses, which she gave, and one of which was on "Massachusetts Avenue, near Symphony Hall," such testimony is admissible although in further direct examination the witness states that the Dr. Turner who called upon the woman was not the defendant and did not look like him, and that his name was Theodore W. Turner while the defendant's name was Augustus W. Turner.

The Commonwealth, at such trial, may introduce in evidence under R. L. c. 175, § 24, to impeach the credit of the witness Mrs. H as to some of her statements, evidence of statements made by her to various police officers immediately after the death of the woman to the effect that the doctor who called upon the woman at her home was named Augustus W. Turner and that he had an office at the address on Massachusetts Avenue near Symphony Hall, if, before the evidence of such statements is introduced, the circumstances under which they were made, sufficient to designate the particular occasions, have been mentioned to the witness and she has been asked if she made the statements and has been given an opportunity to explain them.

At such trial, testimony of a police officer is admissible to the effect that, four days after the alleged criminal act of the defendant and two days before the death of the woman, at a time when other evidence showed that the woman was at the house of Mrs. H, he saw Mrs. H and the defendant talking together on Massachusetts Avenue near the corner of Boylston Street in Boston.

In this case it was *held,* that, under the circumstances, the discretion of the presiding judge as to permitting the Commonwealth to cross-examine or lead the witness Mrs. H could not be said to have been exercised so as manifestly to have prejudiced the defendant.

At the trial above described, the jury were instructed that they should disregard all of Mrs. H's testimony unless they were satisfied beyond a reasonable doubt of the identity of the defendant as the Dr. Turner who called at her house when the woman was there; and a motion to have her entire testimony stricken out was held to have been denied rightly.

A woman, whose death has been caused by a criminal operation to procure a miscarriage, is not an accomplice to the crime although she voluntarily went to the person who performed the operation and paid him for doing it, and, at the trial of an indictment for the crime under R. L. c. 212, § 15, the defendant may be convicted upon evidence contained in a dying declaration of the woman introduced under R. L. c. 175, § 65, without the introduction of evidence in corroboration of her statements.

Where a motion for a new trial after a verdict of guilty upon an indictment under R. L. c. 212, § 15, for using unlawful means with intent to procure the miscarriage of a woman, is based upon the ground of the wrongful admission of testimony of one of the witnesses of the Commonwealth, as to whom in his opening the prosecuting officer had stated that he anticipated "difficulty in getting the truth from this woman," and on the ground that, in his closing argument, the same officer had referred to the same witness as "an abortionist nurse," the determination of the question, whether the motion shall be granted, lies

wholly in the discretion of the presiding judge, and his denial of it cannot be reversed upon exceptions.

INDICTMENT, found and returned on January 9, 1915, charging that the defendant on January 1, 1915, "with intent to procure the miscarriage of one Irene A. Richardson, did unlawfully use some unlawful means to said jurors unknown with said intent; and that in consequence of the use by him . . . of said unlawful means . . . the said Irene A. Richardson died."

The case was tried before *Callahan,* J. During the opening statement to the jury by the Commonwealth, the presiding judge said to the jury, "I will say to the jury that anything said by counsel in opening statement is not to be regarded by them as evidence and is to have no effect whatever upon their minds until it is made good by evidence subsequently introduced, and that I state to you, gentlemen." Later, in the course of the opening, the prosecuting officer stated, without objection being made by the defendant, "Now, gentlemen, we will call the nurse and put her on the stand in the course of the trial, and the government anticipates difficulty in getting the truth from this woman. However, what I am saying is not going to make evidence in this case, it is what you hear on the witness stand and what you see take place there; but that is what we contend."

There was evidence tending to show the following facts:

At about six o'clock in the evening of January 6, 1915, Irene A. Richardson sent for her sister to come to the apartment of one Marie Hansen, numbered 282 on Massachusetts Avenue in Cambridge, and take her to her home in Arlington. When she arrived at her home she was in a feeble condition. She at once was attended there by Dr. Harold R. Webb, the physician of her family, who found her in so dangerous a condition that under his advice she was removed to a hospital. At the hospital a consultation as to her condition was held between Dr. Webb and Dr. Edward P. Stickney, both of whom were of opinion that she had been pregnant three or four months, that an abortion had been performed upon her some days before and that her condition then was critical from septicaemia. An operation was performed about one o'clock in the morning of January 7, but it soon became apparent that she could not live.

At about ten o'clock in the morning of January 7, both physicians

informed her that she was about to die. Her mind was clear and she stated that she understood the fact of her approaching death and that a statement that she was about to make probably would be her last statement.

She then made a statement to the physicians and the matron of the hospital, in which she at first named a certain man as responsible for her pregnancy. Her attention being called to the fact that she was naming a different man than one whom she previously had named, and she being asked, "Do you realize your condition and the necessity for absolute truthfulness, and do you wish to change all the statements you have made?" she said, "Yes," and named a different man, who, she said, gave her $30 to have the abortion performed "and I supplied the rest. . . . I paid Dr. Turner $60. . . . I am now telling the truth. I did not tell the truth before about" who was responsible for the pregnancy. "I went to Boston last Friday [January 1] to the office of A. W. Turner, Massachusetts Avenue, near Symphony Hall. I saw him first there. He put a red tube up inside of me. Then he sent me to Mrs. Hansen, 282 Massachusetts Avenue, Cambridge. I went to bed, had pain and began to flow. Dr. Turner came on Sunday and curetted me, he curetted me again on Monday and again on Tuesday. I got up on Wednesday and telephoned home, and Ethel [her sister] came to this house, 282 Massachusetts Avenue, Cambridge, for me. . . . Mrs. Hansen wasn't in the room when Dr. Turner curetted me . . . I say this realizing that I am about to die." Her right hand then held raised, supported at the elbow by Dr. Webb, she repeated after Dr. Stickney these words, "I say this realizing I am about to die, and this is true, so help me God."

There was other medical testimony confirming the opinions stated by Dr. Webb and Dr. Stickney.

Marie Hansen was called as a witness by the Commonwealth. She stated that a Dr. Turner called her on the telephone on the afternoon of Monday, January 4, and said, "I am Dr. Turner that you spoke to a few months ago," and asked her if she had any rooms vacant; that she responded in the affirmative and he said, "I am sending over a girl roomer. Would you take care of her until I see you?" to which she said, "Yes;" that later on the same day Irene A. Richardson came; that during the time she was

at the house of the witness she seemed sick; that on Tuesday a man came to see the girl, and the witness said, "Is this Dr. Turner?" and he replied, "Yes. T. W. Turner — Theodore Turner." She further testified that no one else than that man saw the girl while she was at the house and that he was not the defendant and did not look like the defendant; that he was the same man who spoke with her on the telephone and whom she had seen two months before in his office in the Hotel Pelham at the corner of Boylston Street and Tremont Street, and whom she had been to in the same office about five years before; that she also had been. to the Hotel Pelham since the death of the girl with Chief Urquhart of the police department of Arlington and Captain Hurley of the police department of Cambridge and Inspector Linton of the police department of Boston, and had pointed out to them an office which she said "looked like the place," and that that office had upon. it a sign reading, "Chemico Electric Company, Dr. A. W. Turner." She further testified that the Dr. Turner who called on the girl stayed only five minutes each time and that she did not know that he "was treating her as a doctor."

In order to impeach the testimony of the witness Hansen as to the defendant not being the Dr. Turner who called upon the girl at the house of the witness, and as to other material details, the prosecuting officer recalled to her the circumstances of interviews between her and various police officers and to her testimony at a previous trial, read from her statements made on such occasions and asked her if she had made them. She denied that she had made statements to the police officers that the man who called upon Irene A. Richardson was Dr. Augustus W. Turner. She also denied that she made others of the statements, could not remember as to others and still others attempted to explain.

The Commonwealth then called the police officers, who testified that she had told them that the Dr. Turner who called on. the girl at her house was Augustus W. Turner and that he had offices in the Hotel Pelham and on Massachusetts Avenue beyond Symphony Hall; and that she made other statements contradictory to some to which she had testified.

The Commonwealth also introduced evidence tending to show that there was no physician registered with the board of registration in medicine in Massachusetts under the name of Theodore

W. Turner or Theodore Turner; that the defendant had an office at Hotel Pelham bearing the sign, "Chemico Electric Company. A. W. Turner, Manager," and also at 262 Massachusetts Avenue, bearing his name, Dr. A. W. Turner, on a sign, and that the latter office was five hundred and fifty feet from Symphony Hall; that both offices had telephones and that there had not been any T. W. or Theodore W. or Theodore Turner with an office at Hotel Pelham during the last five years.

A police officer of Boston testified that on Tuesday, January 5, 1915, he saw the witness Hansen and the defendant talking together at the corner of Boylston Street and Massachusetts Avenue in Boston at about twelve o'clock.

At the close of the Commonwealth's evidence, the defendant asked that all the testimony of the witness Hansen relating to conversations and transactions with the physician who attended Irene A. Richardson be stricken out, and moved that a verdict of "not guilty" be ordered. The motions were denied. Thereupon the defendant rested and asked for the following rulings:

"1. That on all the evidence a verdict of 'not guilty' should be ordered for the defendant.

"2. That on all the evidence and on the weight of the evidence a verdict of 'not guilty' should be ordered by the court.

"3. That on all the evidence the Commonwealth has failed to establish, beyond a reasonable doubt, the identity of the defendant, Augustus W. Turner, with the man alleged to have called at the home of Mrs. Hansen.

"4. That all the testimony of Mrs. Marie Hansen, with reference to the conversation, transaction and actions, which occurred between her and the man who visited her flat, and whom she says she knew as T. W. Turner, be stricken from the record and that the jury be instructed that said evidence has no bearing upon this case.

"5. That if the jury find this defendant has an office on Massachusetts avenue and another at the Hotel Pelham, they are not justified in finding on any testimony of Mrs. Hansen, that he is the man with whom she had conversation and communication at her home at Cambridge.

"6. That the so called 'dying declaration' be stricken from the records and that the jury be instructed not to consider the same

on the ground that the statement was made under the sanctity of an oath and that the statement thus loses its value under the statute.

"7. That, from the testimony of the doctors in the case called by the government, the government has failed to prove that there was any evidence of mechanical means employed to procure an abortion."

The rulings were refused. The jury returned a verdict of guilty. The defendant then moved for a new trial, as stated in the opinion. The motion was denied.

The defendant alleged exceptions, and, he then being sentenced to the State prison for a term of not more than six and not less than five years, the sentence was stayed until further order of the court.

*J. P. Walsh & C. W. Rowley*, (*G. F. Grimes* with them,) for the defendant.

*A. C. Webber*, Assistant District Attorney, for the Commonwealth.

BRALEY, J. The indictment charged that in violation of R. L. c. 212, § 15, the defendant with intent to procure the miscarriage of Irene A. Richardson did unlawfully use some unlawful means with said intent, and that in consequence of the use by him of said unlawful means the said Irene A. Richardson died. A verdict of guilty having been returned, the case is here on the defendant's exceptions to the admission of evidence, the form of questions, the manner of conducting the trial, the overruling of a motion to strike out a portion of the evidence, to the refusal of his requests and to the denial of a motion for a new trial.

While at common law dying declarations of a deceased person were confined to prosecutions for homicide, the St. of 1889, c. 100, now R. L. c. 175, § 65, makes such declarations admissible in the prosecution of the crime for which the defendant is indicted. *Thayer* v. *Lombard*, 165 Mass. 174. *Commonwealth* v. *Bishop*, 165 Mass. 148, 152. *Commonwealth* v. *Thompson*, 159 Mass. 56. *Commonwealth* v. *Homer*, 153 Mass. 343. It is, however, necessary before such declarations can be admitted that the presiding judge must be satisfied of the declarant's belief in the certainty of approaching death, and that the statements made are material and relevant to the issue on

trial. *Commonwealth* v. *Brewer*, 164 Mass. 577. *Commonwealth* v. *Bishop*, 165 Mass. 148, 152. The preliminary inquiry made in the absence of the jury abundantly showed and the judge by admitting the evidence found that the decedent realized that all hope of recovery was gone, and the fact that she held up her right hand and repeated to one of the attending physicians "I say this realizing I am about to die and this is true, so help me God," did not render her declaration that he performed the operation merely a statement under oath and hence, as the defendant contends, inadmissible as hearsay. *Rex* v. *Woodcock*, 2 Leach Crown Law, 563. It is true that she made contradictory statements as to the person responsible for her pregnancy but the change of names in the accusation went to the weight and not to the competency of the evidence when submitted to the jury. *Commonwealth* v. *Cooper*, 5 Allen, 495. *Commonwealth* v. *Roberts*, 108 Mass. 296. *Commonwealth* v. *Brewer*, 164 Mass. 577. And her declarations, having been properly admitted, were left for the jury's consideration under full and suitable instructions. *Commonwealth* v. *Bishop*, 165 Mass. 148. *Commonwealth* v. *Robinson*, 146 Mass. 571, 580, 581.

This evidence, when coupled with the testimony of the doctors describing her symptoms and giving their opinion as to the cause of death and the uncontradicted evidence showing the location of the defendant's office and his name as a practicing physician which corresponded with the description given by the declarant, was sufficient unless controlled to warrant the jury in finding that the decedent died as the result of an abortion unlawfully performed by the defendant, who afterwards treated her at the house of Mrs. Hansen. *Commonwealth* v. *Lucas*, 158 Mass. 81, 83.

The prosecuting officer having called Mrs. Hansen as a witness, exceptions to her testimony are presented and urged in various forms. The witness was the nurse to whom the decedent declared she had been sent immediately after the operation, and in whose care she remained until removed to the hospital where she died. If believed by the jury, she received and cared for the decedent in response to a call over the telephone "from Dr. Turner" who said "I am Dr. Turner that you spoke to a few months ago . . . and then he asked me if I had any rooms vacant, and I said, 'Yes.' He said, 'I am sending over a girl roomer. Would you take care

of her until I see you?'" and that while at her house he attended the decedent as a patient.

It is plain that the defendant's exceptions to the admission of this evidence from which the jury, rejecting other parts of her testimony, could say that the defendant was the guilty operator, are not well taken.

The issue of the defendant's identity was material, and when confronted with the defendant, the witness having denied that he was the doctor who telephoned or visited the house, the Commonwealth, after calling her attention thereto, was properly permitted to show previous contradictory or inconsistent statements made to police officers in which she stated that the defendant was the person with whom she dealt, and that at the first trial she testified that the doctor who called at the house "looked like the defendant." The evidence of a police officer also tending to identify her as the woman seen talking in the street with the defendant after the operation had been performed was admissible. Whatever uncertainty in identification he may have shown on cross-examination or however limited his opportunities for observation may have been, affected the weight, but not the competency of his evidence. R. L. c. 175, § 24. *Brooks* v. *Weeks*, 121 Mass. 433. *Commonwealth* v. *Richmond*, 207 Mass. 240, 245. The judge moreover told the jury when this evidence was offered, and later in full instructions, that such evidence although discrediting the witness was not to be considered as proof of the defendant's guilt. *Donaldson* v. *New York, New Haven, & Hartford Railroad*, 188 Mass. 484, 486.

The defendant also excepted to the form of very many of the questions, contending that they were leading, and that the witness, although called by the prosecuting officer, was being constantly cross-examined in accordance with his opening to the jury, that "we will call the nurse and put her on the stand in the course of the trial" and the "government anticipates difficulty in getting the truth from this woman." The record however fails to show that any exception was taken to the opening and, the judge having cautioned the jury that anything then said could have no effect as evidence and should be disregarded, it must be assumed that his instructions were followed. *Commonwealth* v. *Poisson*, 157 Mass. 510, 512, 513. It is settled that the extent to

which a party should be permitted to cross-examine or lead his own witness must be left very largely to the sound discretion of the presiding judge. *Jennings* v. *Rooney,* 183 Mass. 577, 579, and cases cited. *Commonwealth* v. *Johnson,* 188 Mass. 382, 385, 386, and cases cited. And we cannot say that the judge's discretion appears to have been so exercised as manifestly to have prejudiced the defendant, although if he had been more stringent no ground for criticism could have been justly suggested.

The jury furthermore were instructed to disregard Mrs. Hansen's entire evidence unless they were satisfied of the defendant's identity beyond reasonable doubt, and for reasons previously stated the defendant's motion to have all her evidence stricken out and withdrawn from the jury could not have been granted.

The motion that a verdict be ordered for the defendant the judge also rightly denied. If the jury, who alone were to pass upon the question, accepted the dying statements of the declarant, whose evidence, she not being an accomplice, needed no corroboration, there was evidence as we have said for their consideration that the defendant performed the operation. *Commonwealth* v. *Follansbee,* 155 Mass. 274, 277. *Commonwealth* v. *Hollis,* 170 Mass. 433, 436.

The requests for rulings were refused properly. The first, second, third, fourth, sixth and seventh rulings requested require no comment as they are covered by the discussion of the admissibility of the evidence. The fifth called for instructions on a portion only of the evidence which the judge was not required to give. *Towne* v. *Fiske,* 127 Mass. 125.

A new trial having been moved for, it was for the judge to determine whether it should be granted on the alleged ground that the testimony of Mrs. Hansen, the Commonwealth's witness, after the prosecuting officer with knowledge of her testimony at the former trial had stated to the jury in his opening "that the government anticipates difficulty in getting the truth from this woman," was improperly admitted, and because after calling her he had argued to the jury in closing, "that she was an abortionist nurse." *Cunningham* v. *Magoun,* 18 Pick. 13, 15. Nor can the decision denying the motion be reviewed on exceptions. *Lopes* v. *Connolly,* 210 Mass. 487, 495, 496.

We have considered all of the voluminous exceptions and, not being able to discover any material error of law, the order must be

*Exceptions overruled.*