BESSIE KATZ *vs.* MORRIS KATZ.

Plymouth.   November 24, 1930. — January 6, 1931.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Marriage and Divorce. Domicil.*

There was evidence, at the hearing of a libel by a wife for divorce on the ground of cruel and abusive treatment, that the parties were married in New Jersey and thereafter lived together for some years in Pennsylvania, where the libellee kept a store; that his business then became very unprofitable; that it was agreed between them that the libellant should come to this Commonwealth for a surgical operation, and that the libellee would come here as soon as he could and that they would make a new start here; that the libellee came here about a week after the operation, bringing with him all his personal belongings and declaring his intention to remain and locate here; that the parties looked about for a home here; that the libellee remained here for about two weeks, during which period the parties lived and slept together in a room in the house of a relation; and that the alleged cruel and abusive acts occurred a few days after the libellee's arrival here. *Held*, that a finding was warranted that the parties had cohabited and acquired a domicil in this Commonwealth within the provisions of G. L. c. 208, § 4, so that the court had jurisdiction of the case.

On evidence of physical violence on the part of the libellee, a finding also was warranted that the acts complained of by the libellant were cruel and abusive; and the entry of a decree *nisi* was proper.

LIBEL for divorce, filed in the Superior Court on August 3, 1928, and subsequently amended.

The libel was heard by *Donahue,* J. Material evidence is stated in the opinion. The judge ordered the entry of a decree *nisi* and reported the case for determination by this court.

*E. J. Campbell;* for the libellant, submitted a brief.

No argument nor brief for the libellee.

SANDERSON, J. This is a libel for divorce which, by amendment, alleges cruel and abusive treatment on or about June 19, 1928, and on divers other days and times. The judge of the Superior Court made an order for the entry of a decree *nisi* for divorce on the ground alleged and the libellee saved exceptions to the denial of certain requests for rulings. The case is reported for the determination by this court, with the statement: " if on the evidence and the law the entry of a decree *nisi* was warranted such decree is to be entered; if on the law and the evidence a decree *nisi* is not warranted a decree is to be entered dismissing the libel." No brief has been filed by the libellee.

The libellant testified that she was born in Massachusetts where she lived until September, 1923, when she moved to Philadelphia, Pennsylvania. She was married to the libellee, in New Jersey, on May 30, 1924, and returned to live in Philadelphia where he conducted a store. One child was born of the marriage, who died in 1926. While in Philadelphia the libellee talked with the libellant and others about coming to Brockton, Massachusetts, to reside. His business in the store became unprofitable and was going from bad to worse. In April, 1928, the libellant came to Brockton, and while there became ill and was treated by a physician who advised an operation. She made inquiries in that city for a position for her husband, made arrangements for them to live together at the house of her brother, in Brockton, and returned to

Philadelphia. Her husband informed her that he wanted to sell his store but was unable to do so, and that the business was practically gone. He expected that a mortgage on the property would be foreclosed. She testified that it was agreed between them that she would come back to Brockton for an operation and he would come as soon as he realized all that he could from the store, and they would make a new start in Massachusetts. In May, 1928, the libellant came to this Commonwealth and was obliged to wait until June 10 for her operation, when it was performed. The libellee came a week later bringing with him all his clothing and personal belongings. When he met the libellant he said: " I'm here and I'm here to stay." He remained in this Commonwealth until the last week in June and while here said that he was all through with Philadelphia and was pleased to get away, and on several occasions he expressed a present intention to locate in business and remain in Brockton. He tried to get work there. During this period he and his wife occupied the same room and slept together each night. He accepted the offer of his brother-in-law of a home until he could establish one of his own and looked about in Brockton to find such a home. Much of this testimony was contradicted by the libellee. The parties lived together without trouble for a few days and then at a time when she was weak from the effects of the operation he struck her on several occasions, shoving her, kicking her and leaving black and blue marks on her legs, and threatening to shoot her, and she was much in fear of him. As a result of this treatment she lost sleep, was unable to eat, suffered physically and mentally from abuse and threats. The evening before he left Brockton he pointed a revolver at her and threatened to kill her. She screamed and fainted, and became hysterical. He then left her and they have not lived together since. An attending physician testified that he observed marks and bruises upon the libellant which were consistent with blows having been received about a week after June 17, and that blows and kicks would account for her physical and mental con-

dition; that the physical abuse which her husband inflicted upon her and the threats and the fright resulting therefrom caused the libellant to suffer pain, physically and mentally, and retarded the normal recovery from the operation.

G. L. c. 208, § 4, provides: "A divorce shall not, except as provided in the following section, be decreed if the parties have never lived together as husband and wife in this Commonwealth; nor for a cause which occurred in another jurisdiction, unless before such cause occurred the parties had lived together as husband and wife in this Commonwealth, and one of them lived in this Commonwealth at the time when the cause occurred." The evidence warranted a finding that the libellee was guilty of cruel and abusive treatment of the libellant at Brockton. *Bailey* v. *Bailey,* 97 Mass. 373, 378. *Freeman* v. *Freeman,* 238 Mass. 150, 159. *Linnell* v. *Linnell,* 249 Mass. 51. *Meader* v. *Meader,* 252 Mass. 132.

But the jurisdiction of the court to grant a divorce on that ground depends upon proof that the parties were living together in this Commonwealth as husband and wife within the meaning of the statute quoted. They could not be found to be so living unless they had cohabited in this Commonwealth and had acquired a domicil here. *Ross* v. *Ross,* 103 Mass. 575. *Friedrich* v. *Friedrich,* 230 Mass. 59, 60. *Field* v. *Field,* 236 Mass. 256, 257. *Newth* v. *Newth,* 241 Mass. 431. *Hayes* v. *Hayes,* 256 Mass. 97, 99. The evidence warranted a finding of cohabitation. They could be found to be living together in Brockton " under conditions which would be regarded as constituting a family relation." *Newth* v. *Newth,* 241 Mass. 431, 433. *Weston* v. *Weston,* 143 Mass. 274. *Commonwealth* v. *Lucas,* 158 Mass. 81, 84. Ordinarily the question of domicil is one of fact. *Thayer* v. *Boston,* 124 Mass. 132, 144. *Hayes* v. *Hayes, supra.* An established domicil continues until a new one is acquired. *Shaw* v. *Shaw,* 98 Mass. 158, 160. " In order to acquire a domicil both the fact and the intent must concur. Actual residence and the intention to remain either perma-

nently or for an indefinite time without any fixed or certain purpose to return to the former place of abode are required to constitute a change of domicil." *Winans* v. *Winans*, 205 Mass. 388, 391. *Worcester* v. *Wilbraham*, 13 Gray, 586, 590. *Wilbraham* v. *Ludlow*, 99 Mass. 587, 592. *Field* v. *Field*, 236 Mass. 256. Upon the testimony a finding that the parties left Philadelphia with the definite intention of not returning but of changing their residence to Brockton was warranted, and the finding that within the meaning of G. L. c. 208, § 4, they lived together as husband and wife in Brockton must stand.

In accordance with the terms of the report a decree *nisi* is to be entered.

*So ordered.*