COMMONWEALTH *vs.* ISRAEL LEVENTHAL & others.

Suffolk.    October 21, 22, 1920. — December 2, 1920.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Evidence,* Of intent, Competency, Testimony of accomplice.  *Practice, Criminal,*
Evidence of previous crime, Variance, Continuance, Change of venue.  *Venue.*
*Witness,* Accomplice in crime, State's evidence.  *Jury and Jurors.  Pleading,*
*Criminal,* Indictment, Plea, Motion to quash, Abatement.

At the trial of an indictment charging three defendants in one count with burning
an insured building in February with intent to injure the insurer and in another
count charging a fourth and a fifth defendant with having incited and pro-
cured the three principals to commit the crime to defraud the insurer, no error
is committed in admitting, in addition to evidence of the February fire and the
participation of all the defendants therein, evidence relating to incendiary fires in
the same building in the preceding October and November, although it appears
that none of the principals participated in the October and November fires and
that the fourth defendant did not participate in the October fire, if the jury
are instructed to disregard the evidence of the preceding fires so far as the
first three defendants were concerned, that there was no evidence connecting
the fourth defendant with the October fire, and that the only purpose of the
evidence was to aid the jury in determining the question of intent as bearing
on the count against the fourth and fifth defendants.

At the trial of an indictment charging several persons with a crime, where
two of them, one after pleading guilty and the other after an entry of *nolle*
*prosequi* had been made as to him, testified for the Commonwealth and
against their co-defendants, the first acknowledging participation in the
crime and the second admitting knowledge that it was being contemplated,
it was for the jury to determine what weight should be given to such
testimony and whether, upon it alone, the remaining defendants should be
convicted.

There was no error in instructions given to the jury as to the testimony of the first
of the two government witnesses above described, that it was the jury's duty
to take into consideration what he said about himself, "that he, for money,
did this thing, as bearing upon the weight you will give his testimony. . . . It
will be important again in determining the weight to be given his testimony,
and from independent sources than from him, how far and to what extent, if
at all, his story is corroborated in whole or in part;" nor in instructing
them as to the second witness "to take into consideration . . . his connection
. . . with this fire and his knowledge prior to the fire."

Where the evidence at the trial of an indictment charging the burning of a "dwell-
ing house of A" tends only to show the burning of a dwelling house owned but
not dwelt in by A, there is no variance.

A general plea of not guilty to an indictment is an admission of its validity and a
waiver of all matters in abatement.

No exception lies to a refusal of a request of a defendant under indictment for

leave to withdraw a plea of not guilty and to file a motion to quash the indictment and a plea in abatement grounded on allegations that, when the grand jury were considering the case, other persons than members of the grand jury and witnesses were present when other witnesses were testifying; and the fact that the request to withdraw the plea was made does not alter the rule that all matters in abatement of the indictment were waived by the general plea of not guilty.

Article 5 of the Amendments to the Constitution of the United States does not apply to proceedings in the courts of the Commonwealth; and therefore a plea ·in bar to an indictment, charging the burning and the procuring of the burning of a dwelling house and the burning and the procuring of the burning of an insured building with intent to defraud the insurer, must be overruled if the ground of the plea is only that the defendants were lawfully summoned and were required to testify "at the sitting of the Grand Inquest" concerning the matters which were there inquired into and which were the subject matter of the indictment and that by the further prosecution of the indictment the defendants were "deprived of the privileges and immunities guaranteed" in that amendment to the Federal Constitution.

It was *said*, that, on the plea in bar above described, the questions, whether the defendants when compelled to testify before the grand jury were deprived of their rights under art. 12 of the Declaration of Rights of our Commonwealth, and the extent to which their general plea of not guilty was a waiver of their rights, were not before this court.

No error was found by this court in the denial by a judge of the Superior Court of motions for a continuance. and a change of venue of the indictments above described, offered when the indictment was about to be tried in the county of Suffolk on the ground that certain publications in certain daily newspapers in· Boston were prejudicial to the defendants.

INDICTMENT in six counts, found and returned on September 4, 1916. The first count charged that Eddie Kandler, Israel Leventhal, Jacob Leventhal and Jacob Smaller on February 15, 1916, "wilfully and maliciously did burn the dwelling house of Annie Levine." The second count charged that Abraham L. Matthews, Simon Levine and Samuel Lishner procured those named as defendants in the first count to commit the arson there charged. The third count charged the defendants named in the first count with burning an insured building with intent to injure the insurers, and the fourth count charged the defendants named in the second count with procuring those named in the third count to commit the crime there charged. An entry of *nolle prosequi* was made as to the fifth and sixth counts before trial; and as to the second and fourth counts such an entry was made as to Abraham L. Matthews. On September 13 and 14, 1916, all the remaining defendants pleaded not guilty. At the time of trial Kandler pleaded guilty and testified for the Commonwealth.

On October 16, 1916, the case was placed upon the list of cases assigned for trial for October 23. On October 20, the defendants filed a motion for a continuance and a change of venue, based on allegations in substance that they were prejudiced by articles published in certain daily newspapers relating to the crimes with which they were charged. The motion was overruled.

The defendants thereupon filed a motion to quash the indictment on the grounds that the dwelling house alleged to have been burned was not sufficiently described, and that the counts in the indictment were improperly joined.

On October 23, the defendants filed a plea in abatement based on allegations that a police officer and others, not members of the grand jury or witnesses, were present in the grand jury room when the case was being heard by the grand jury and witnesses were testifying, and a plea in bar based on the allegation that the defendants were summoned and were required to testify "at the sitting of the Grand Inquest . . . of and concerning the matters and things then and there being inquired into, and now contained in this presentment;" and that the prosecution of the indictment deprived them of the privileges and immunities guaranteed by art. 5 of the Amendments to the Constitution of the United States.

In presenting the foregoing motion and pleas other than the motion for continuance and change of venue, the defendants asked leave to withdraw their pleas of not guilty for that purpose. The district attorney objecting, the request was refused and the motions were overruled.

The case then was tried before *Sisk*, J. Material evidence is described in the opinion. At the close of all the evidence the defendants asked the judge to instruct the jury as follows:

"1. While it is competent for the government to introduce the evidence of accomplices in support of the allegations contained in the indictment, such evidence is to be taken with great caution unless it is corroborated by independent evidence tending to substantiate a material part of the allegation. Mere multiplication of accomplices does not satisfy this requirement of corroboration in a material particular.

"2. There is no corroboration by independent proof of material facts in the evidence offered through the witnesses Kandler and Matthews."

"'4. If the jury shall find that the witness Kandler contradicts the witness Matthews, this contradiction should be taken into account by the jury in determining the truthfulness of both in their entire testimony and the weight to be given it.

"5. In judging of the truthfulness of the witness Kandler and of the weight to be attached to his testimony, the jury should take into account that he is a self-confessed criminal of more than one burning in which human lives might have been taken and wilful murder thus committed.

"6. It is not to be presumed that the fire named in this indictment was set by Kandler because he says he did it. Proof of the fire and the person or persons who set it must be proven to the satisfaction of the jury beyond a reasonable doubt."

The requests were refused.

Israel and Jacob Leventhal and Smaller were found guilty of the crime charged in the first and third counts, and Levine and Lishner were found guilty of those charged in the second and fourth counts. All such defendants alleged exceptions.

*H. H. Pratt,* for the defendants Levine, Smaller, and the Leventhals.

*E. Greenhood,* for the defendant Lishner.

*A. C. Webber,* Special Assistant District Attorney, for the Commonwealth.

CARROLL, J. The defendants Smaller, Israel Leventhal and Jacob Leventhal were found guilty on the first and third counts of the indictment. The first count charged them with burning the dwelling house of Annie Levine. In the third count they were accused of burning a building with the intent to injure certain insurance companies. They were sentenced on the third count. Levine and Lishner were found guilty on the second and fourth counts. They were sentenced on the fourth count. The second count charged them with procuring the Leventhals, Smaller and Kandler to commit the felony, and the fourth count alleged they did incite and hire Smaller, the Leventhals and Kandler to burn the building in order to defraud the insurers. A *nolle prosequi* was entered in the indictment against Abraham L. Matthews who was a witness for the Commonwealth.

The time of the burning alleged in the indictment was February 15, 1916. A fire occurred on that day in the building numbered

235–237, 239 Dudley Street, Boston, owned by Annie Levine, wife of the defendant Simon Levine, upon which building the defendant Lishner held the second mortgage. There was evidence of previous fires in the building, — in October and November, 1915. Kandler, who pleaded guilty and was a witness for the Commonwealth, testified that "about October 1st, 1915, he met" Reuben Levine and the defendant Simon Levine and was told that Simon bought the house from Lishner and was to have it remodelled, but before "starting to do anything in the house, 'the only thing' was 'to set a fire in that house' and they would 'have some money,' meaning insurance; that they hired Lurie" to set the fire; that "on the next day, Saturday," Simon Levine "paid Lurie $25," Levine saying that "he would not have much out of it; that the fire was 'small loss.'" Kandler further testified that after the October fire Simon Levine asked him and Reuben Levine to do the plastering and paper hanging. They agreed to do it for $27.50, but the contract was made out for $77.50, Simon Levine agreeing that the $77.50 would include "setting another fire in that house;" that some of the work had been done, when Simon Levine told him not to set the fire until he should "get insurance;" that "after Simon Levine got the first draft" they were told to go to work, and began "papering downstairs;" that Reuben and Lishner went to the top floor and broke holes in the closets and ceiling, when Kandler said the "janitor was watching." They told Kandler to go out for wall paper so that "they should not have suspicions on the witness;" and that when he returned the fire department was working on the building. This was the second fire, November 16, 1915, and on that day Kandler brought to the house some plaster of paris, lime and ten gallons of turpentine. According to Kandler, about the first of February, 1916, Simon Lishner said to him that the two previous fires were not successful, it would cost $7,000 to replace the house, and the only thing to do was "'to make a good fire there' so that the building should burn down." Simon Levine and Lishner urged him to set the fire, Lishner agreeing that Smaller and the two Leventhals would assist him, and that they would be paid $600. Kandler consented to this arrangement and a few days before the fire he, with the Leventhals, made holes in the plastering and flooring so that the fire would spread rapidly; turpentine was spread on the various

floors and after the fire started he was driven away in an automobile with Smaller and the Leventhals, and was paid $125.

1. There was no evidence that Jacob and Israel Leventhal and Smaller were concerned in the fires in October and November, and nothing to show that Lishner was concerned in the October fire. The evidence tended to show, however, that Lishner was connected with the November fire and that Simon Levine participated in both fires. The jury were carefully instructed on this branch of the case. They were told to disregard the evidence relating to these fires, so far as the defendants Smaller and the Leventhals were concerned; and that there was no evidence in the case connecting Lishner with the fire of October 15, that the only purpose of the evidence was to aid them in determining the question of intent as bearing on the fourth count of the indictment.

Evidence tending to prove similar but distinct crimes committed by the defendant is not admissible to show that he is guilty of the crime charged. The burnings of the building in October and in November were evidence, however, against the parties participating in these fires, as showing that the burning in February, 1916, was wilful and intentional and not the result of accident or negligence. The evidence, if believed, tended to prove that the building was burned in February to defraud the insurers. To show the purpose and intent with which this fire was set, evidence of previous acts indicating an existing disposition controlling the defendants in the commission of the crime was itself admissible; being competent for this purpose, it was no objection that it tended to prove other crimes. *Commonwealth* v. *Bradford*, 126 Mass. 42, 44. *Commonwealth* v. *Bean*, 137 Mass. 570. See in this connection *Commonwealth* v. *Coyne*, 228 Mass. 269.

2. The judge was not required to give the first and second requests for instructions asked for by the defendants. He was not bound to instruct the jury that the evidence of an accomplice was to be taken with great caution unless corroborated in a material point. The jury were told, in speaking of the testimony of Kandler, that it was their duty to take into consideration what he said about himself, "that he, for money, did this thing, as bearing upon the weight you will give his testimony. . . . It will be important again in determining the weight to be given his testimony, and from independent sources than from him, how far and

to what extent, if at all, his story is corroborated in whole or in part." And in deciding the weight to be given the testimony of Matthews the jury were instructed "to take into consideration . . . his connection . . . with this fire and his knowledge prior to the fire." It may in some cases be unsafe to convict on the uncorroborated testimony of an accomplice, but in this Commonwealth it is entirely a question for the jury to decide. They may find it unwise to rely on such testimony, or they may believe it to be true. As the jury could convict on the evidence given by Kandler and Matthews, there was no error in the instruction given. *Commonwealth* v. *Bosworth,* 22 Pick. 397, 399. *Commonwealth* v. *Holmes,* 127 Mass. 424. *Commonwealth* v. *Wilson,* 152 Mass. 12. *Commonwealth* v. *Clune,* 162 Mass. 206. *Commonwealth* v. *Bishop,* 165 Mass. 148. *Commonwealth* v. *Phelps,* 192 Mass. 591. *Commonwealth* v. *Brennor,* 194 Mass. 17. It was shown that there was a fire in the building numbered 235–237, 239 Dudley Street, on February 15, 1916, and the Commonwealth did not rely entirely on the evidence of Kandler and Matthews to prove this fact, but on their uncorroborated testimony it was open to the jury to convict. The defendants were not in any way harmed by the manner in which the remaining requests were dealt with by the presiding judge. So far as they are correct statements of law, they were fully covered by the charge.

3. It is the contention of the defendants that there was a variance between the allegation and proof. It was alleged in the first count that the building burned was the dwelling house of Annie Levine. She was the owner of the building, but never lived in it. At the time of the fire it was only partly occupied. On the street floor there was a plumber's shop and a tailor's shop, the latter belonging to Matthews, who, with his family, dwelt in the rooms in the rear. In *Commonwealth* v. *Elder,* 172 Mass. 187, the defendant was indicted for burning a barn of Sarah L. Wright within the curtilage of her dwelling house. The proof was that the barn was her property, situated within the curtilage of the dwelling house owned by her, but in which she had never lived, and which at the time was occupied by her tenant who dwelt in the house and occupied the barn. It was there decided that the averment that it was the dwelling house of the owner, was satisfied by proof that it was an actual dwelling owned by her. And in com-

menting on *Commonwealth* v. *Barney,* 10 Cush. 478 (upon which the defendants in the case at bar rely), where the house had not been dwelt in for months and was the dwelling of no one, it was said: "In *Commonwealth* v. *Barney* the contention was whether the building was a dwelling house within the meaning of the statute, and not whether there was a variance between the proof and the allegation that it was the dwelling of its owner." The present case is governed by *Commonwealth* v. *Elder.*

4. After the defendants pleaded not guilty they filed a motion to quash the indictment; a plea in abatement, based on the fact that an officer of the police force of the city of Boston and other persons not members of the grand jury, or witnesses, were present while the grand jury were investigating the facts concerning the crime charged; and a plea in bar, alleging that they should not be further held to answer the indictment because they were summoned to appear before the grand jury and compelled to testify concerning matters there inquired into; and they asked that they be permitted to withdraw temporarily their pleas of not guilty and file the pleas and motion.

The motion to quash was overruled properly. By their plea of not guilty the defendants admitted the validity of the indictment, and their plea was a waiver of all matters in abatement. The objections to the indictment now relied on in the motion to quash could be raised only before the general plea of not guilty. *Lebowitch* v. *Commonwealth,* 235 Mass. 357, and cases cited.

There was no error in the refusal to permit the withdrawal of their pleas of not guilty, and the fact that this request was made does not alter the rule that all matters in abatement were waived by the general plea of not guilty. For the reasons just stated the plea in abatement was overruled properly. *Lebowitch* v. *Commonwealth, supra.*

There was no error in overruling the plea in bar. The plea alleged that "the defendant . . . ought not further to be held to answer to the indictment" because "he was lawfully summoned to appear before said Court at the sitting of the Grand Inquest" and was there required to testify concerning the matters then and there inquired into; and "that by the further prosecution hereof he is deprived of the privileges and immunities guaranteed to him in Article 5 of the Articles in addition to and amendment of the

Constitution of the United States." The fifth article of the Amendment to the Constitution of the United States does not apply to proceedings in the State courts. *Commonwealth* v. *Murphy,* 165 Mass. 66. *Commonwealth* v. *Hitchings,* 5 Gray, 482. "That the first ten Articles of Amendment [to the Constitution of the United States] were not intended to limit the powers of the State governments in respect to their own people, but to operate on the National Government alone, was decided more than a half century ago, and that decision has been steadily adhered to since." Waite, C. J., in *Spies* v. *Illinois,* 123 U. S. 131, 166. To the same effect is *Minneapolis & St. Louis Railroad* v. *Bombolis,* 241 U. S. 211, and cases cited at page 217. The question whether the defendants when compelled to testify before the grand jury were deprived of their rights under art. 12 of our Constitution and the extent to which their general plea of not guilty was a waiver of their rights, are not before us on the plea in bar; on this point see *State* v. *Duncan,* 78 Vt. 364.

We find no error in denying the motion for a change of venue, see *Crocker* v. *Justices of the Superior Court,* 208 Mass. 162, 180; nor in the conduct of the trial.

*Exceptions overruled.*