COMMONWEALTH *vs.* RAYMOND L. FULLER.
SAME *vs.* SAME.

Worcester. May 24, 1927. — June 29, 1927.

Present: CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Larceny,* By false pretenses. *Conspiracy. Evidence,* Competency. *Pleading, Criminal,* Plea.

At the trial of two indictments against an owner of cattle and an employee, the first charging conspiracy to steal money from the Commonwealth and the second charging larceny, the employee pleaded guilty to the first indictment and, the second indictment being nolprossed as to him, testified for the Commonwealth. There was evidence that at the request of the first defendant, his employer and the owner of certain cattle, he signed as to the cattle an application to the division of animal

At the trial above described, the Commonwealth asked the second defendant if he was the owner of the animals at the time when he made a claim as owner for reimbursement. Upon objection by the defendant the judge said, "Isn't he a party to this indictment?" and counsel for the first defendant then said, "He is, but he has taken himself out by his plea." The district attorney then was permitted, subject to exception by the defendant, to put in evidence that the second defendant had pleaded guilty to the indictment. The judge charged the jury to the effect that the second defendant's plea of guilty was competent against the second defendant only, and that they must not consider it in any way against the first defendant. *Held,* that the first defendant's rights were fully protected.

Two INDICTMENTS, found and returned on October 29, 1926, against Raymond L. Fuller and Charles O. Clark, and described in the opinion.

In the Superior Court, the indictments were tried together before *Thayer,* J. Proceedings at the trial and material evidence are stated in the opinion. The defendant Fuller was found guilty on both indictments and alleged exceptions.

Material statutory provisions and rules and regulations of the division of animal industry are set out in *Commonwealth* v. *Jacobson, ante,* 311, 316–321.

*J. H. Schoonmaker,* for the defendant.

*H. W. Brown,* Assistant District Attorney, (*C. B. Rugg,* District Attorney, with him,) for the Commonwealth.

SANDERSON, J. The defendant Fuller was charged with Clark in one indictment with conspiracy to steal and in the other with stealing money of the Commonwealth of the

value of more than $100.   After Clark had pleaded guilty
to the conspiracy indictment and the indictment for larceny
was nolprossed as to him, he was called as a witness for the
Commonwealth on the trial of Fuller on both indictments.

The cases relate to obtaining money from the Common-
wealth for cattle which have reacted to the tuberculin test,
and the same statutes and rules are involved as those which
have been referred to in *Commonwealth* v. *Jacobson, ante,* 311,
316–321.   Repetition of what is stated in the opinion in that
case will be omitted except in so far as it may seem necessary
to bring out some of the special features of this case.

Clark testified in substance that he was taking care of
Fuller's cattle when Fuller asked him to make an application
for a tuberculin test of those cattle, and that he made the
application in June, 1925.   Clark signed the application for
such a test of "my herd of cattle consisting of sixty," agree-
ing to comply with the rules and regulations prescribed by
the director for the application of the test.   His signature
followed the words "Owner's authorized representative."
In August he wrote a letter addressed to the department of
animal industry as follows: "About two months ago I sent
you an application to have my herd Federal tested.   My
milkman is anxious I get the job done.   Is there a chance
of getting it done the first part of September, the 5th or
10th?"   He talked with Fuller about sending this letter.
When the test was made in September, one hundred cows
owned by Fuller were on the place.   Ninety of these reacted
and were tagged for identification.   Clark and the veteri-
narian who applied the test signed the appraisal of these
reacting cattle.   Fuller signed the report of proceeds of sale
of each animal that reacted, entering certain figures under
the heading "Net Proceeds Paid to Owner of Each Animal,"
making a total of $1,451 as the net salvage from the animals,
and certifying the payment of that amount to Clark or his
agent.

Clark signed the claim for reimbursement as owner, in
which the appraised value of each of the ninety cows that
reacted was given, the salvage for each one corresponding
in each case with the sum stated in the report of proceeds of

sale; and he certified that no other person had any claim on the animals, that the statement of appraisal and salvage was correct, that he had not by wilful act or neglect contributed to the spread of bovine tuberculosis, and made affidavit that the statements were true. The amount thus claimed was one third of the difference between the appraised value and the sum reported as salvage, in all cases where one third did not exceed $25 for a grade animal or $50 for a pure bred animal. In the remaining cases the claim for a grade animal was $25 and for a pure bred animal $50. The total amount of this claim was $2,620.18. Later Clark received from the Treasurer and Receiver General of the Commonwealth a check to his order for that sum which he indorsed and gave to Fuller. He testified that Fuller at no time paid him $1,451 for cows; that he knew he took a false oath as to the payment to him by Fuller of the proceeds of sale and as to his ownership; that he expected the Commonwealth to think he was the owner and to pay him the amount claimed; and that when the cattle cases were being investigated, Fuller said "It is my fault, I got you into it and I'll stand by you." He also testified that he did not intend to deceive or get money by false pretences.

There was evidence that the clerk in the division of animal industry, designated in G. L. c. 129, § 4, whose duty it was to approve the papers in this case, relied on the truth of the sworn statement of Clark that he was owner, and accepted as true the statement of Fuller that he had purchased the reactors of Clark. A livestock commission merchant in Brighton sold ninety-five cattle for Fuller for a total of $2,962.37. The jury could find from the evidence that ninety of these cattle were those that reacted to the test made upon the application of Clark. There was evidence that the average weight of the ninety-five cattle was one thousand pounds, and the price per pound on the day of their sale was four cents or $200 for five of the cattle. The jury would have been justified in finding that the five animals which were not tagged brought approximately $200. After deducting commissions and expenses, the amount paid Fuller for the ninety-five cows was $2,551.57. At the close

of the evidence for the Commonwealth, the defendant rested. He excepted to the refusal of the trial judge to direct a verdict in his favor and to certain rulings on the admission of evidence.

The false statement of Fuller that he had paid Clark for the animals that had reacted to the test, and the false statement of Clark in his claim for reimbursement for cattle slaughtered, that he had received as salvage the amounts therein stated, could have been found to be misrepresentations of material facts, made with intent to defraud; it could also have been found that the Commonwealth relied upon these statements and that the fraudulent purpose was accomplished when the amount of the claim was paid to Clark by check from the Treasurer of the Commonwealth. Without these statements of the proceeds of sale of the condemned animals no money could legally have been paid by the Commonwealth for reimbursement. It was undisputed that Clark made no sale of the animals and received nothing for them, that they were sold directly by Fuller in the Brighton market. The evidence amply warranted a finding that, in making the sales, Fuller received substantially more than the sum which he represented he had paid Clark for them. The obligation of the Commonwealth to reimburse the owner of cattle that react to the tuberculin test is not an absolute one. It depends upon compliance of the parties with certain statutory provisions and with the rules and regulations, and also, within certain defined limits, upon the opinion of the director. Inasmuch as the verdict of the jury in the larceny case could have been based upon the false statements as to proceeds of the sales of the animals, the other grounds upon which the verdict might be supported need not be discussed. The jury also would have been justified in finding that Fuller and Clark, acting with a common purpose, had entered into a conspiracy to commit this crime. *Commonwealth* v. *Morrison*, 252 Mass. 116, 123.

The only exception to the rulings on evidence argued is to the testimony of Clark in reply to a question by the district attorney that he had pleaded guilty. Before this evidence was offered, the district attorney had directed the

attention of the witness to the claim for reimbursement which he had signed as owner, and asked him if he was owner at the time. Upon objection by the defendant, the judge said, "Isn't he a party to this indictment?" and counsel for Fuller then said, "He is, but he has taken himself out by his plea."

As the fact, that Clark by his own plea had been eliminated as a party to the issue on trial was first thus introduced into the case by Fuller's counsel, he cannot justly complain because the district attorney then put in evidence the fact that the witness pleaded guilty. The district attorney would not have the right to call a defendant if on trial to testify against a codefendant, G. L. c. 233, § 20, cl. 3, but, after he has been eliminated as a party to the issue being tried by his plea of guilty or otherwise, he may be called to testify for the Commonwealth. See *Commonwealth* v. *Clune,* 162 Mass. 206, 207; *Commonwealth* v. *Leventhal,* 236 Mass. 516, 517. The plea of guilty to participating in a crime with the defendant by a witness called to testify against him, whether the offence be conspiracy or some other crime, tends to discredit his testimony. "It bears against a witness' credibility that he is an accomplice in the crime charged and testifies for the prosecution." Wigmore on Ev., (2d ed.) § 967. He may be influenced by some supposed advantage that might come to him from testifying for the Commonwealth. *Commonwealth* v. *Clune, supra. Commonwealth* v. *Bishop,* 165 Mass. 148, 150. Decisions like *Commonwealth* v. *Perry,* 248 Mass. 19, 27, and *Kirby* v. *United States,* 174 U. S. 47, which hold that a plea of guilty by the person who has stolen goods or a judgment of his conviction is not evidence in the trial of a defendant for receiving the same goods, have no relevancy to the question now under consideration.

The defendant's rights were fully protected by the charge to the jury to the effect that Clark's plea of guilty was competent against Clark only, and that they must not consider it in any way against Fuller.

Exceptions not argued have been treated as waived. In both cases the entry must be

*Exceptions overruled.*