COMMONWEALTH *vs.* PAUL GIACOMAZZA & another.

Middlesex.    April 6, 1942. — May 25, 1942.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Pleading, Criminal,* Bill of particulars. *Practice, Criminal,* Disclosure of evidence before grand jury; Disclosure of evidence of Commonwealth; Trial of defendants together; Plea; Exceptions: general exception; Discretionary control of evidence; New trial. *Proximate Cause. Homicide. Evidence,* Presumptions and burden of proof, Accomplice, Competency, Exhibit, Photograph, Relevancy and materiality.

An indictment for murder, taken with a bill of particulars furnished by the Commonwealth, sufficiently apprised the defendant of the nature and substantial facts of the offence charged; the defendant was not entitled as of right to further particulars stating minutiae of the alleged offence or disclosing all the material evidence upon which the Commonwealth intended to rely.

There was no error in the denial of a motion by one of several defendants jointly indicted that he be furnished with a transcript of the evidence given before the grand jury and a copy of an alleged confession of a codefendant.

Evidence warranting a finding that a shooting of an elderly man in the

wrist and back had an effect on him which, by reason of certain physical infirmities, he was unable to withstand, justified the further finding that the shooting was the proximate cause of his death nearly two months later.

A finding that two defendants indicted for murder shot a filling station attendant late in the evening was warranted on the testimony of a third defendant who had pleaded guilty to being an accessory after the fact to the crime, corroborated in some particulars by other evidence.

Testimony of a statement made by one of several defendants in the absence of the others was properly admitted at a criminal trial of the defendants together where the rights of the other defendants were safeguarded by express instructions to the jury that the testimony could not be considered as against them.

It was within the discretion of the judge at a criminal trial of several defendants to allow one of them to change his plea to guilty in the presence of the jury.

A general exception by one of two defendants at a criminal trial to the admission of evidence competent against his codefendant must be overruled.

In the circumstances, a statement given to the police by one who at a subsequent criminal trial changed his plea to guilty and testified for the Commonwealth against codefendants was not improperly admitted in evidence when offered by the Commonwealth as bearing upon his credibility after the cross-examination of such witness during which the statement was used.

No error appeared at a murder trial in the introduction of certain properly verified bullets and weapons.

There was no error at a murder trial in the admission in evidence of a composite photograph showing a bullet fired by a firearms expert through a weapon involved in the case and a bullet removed from the body of the deceased.

No abuse of discretion at a criminal trial was shown in allowing a medical expert for the Commonwealth to testify as to matters forming part of its case in chief after the defendant had rested, or in allowing the District Attorney to put a leading question to a medical expert in direct examination.

No error nor abuse of discretion appeared in the denial of a motion for a new trial of an indictment for murder based on the grounds that a verdict of guilty was against the law, the evidence and the weight of the evidence; nor did this court, upon an examination of the entire case under G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341, consider that justice required a new trial.

INDICTMENT, found and returned on May 20, 1941.

The case was tried before *Williams*, J.

*H. S. Avery,* for the defendant Giacomazza.

*M. J. Reardon,* for the defendant Nickerson.

*R. F. Bradford,* District Attorney, for the Commonwealth.

RONAN, J.  Giacomazza and Nickerson have been convicted of murder upon a trial of an indictment charging them and one Lenehan with the commission of the crime, but Lenehan did not go to trial upon this indictment.  He also was indicted as an accessory after the fact.  Both indictments were tried together until Lenehan, toward the end of the Commonwealth's case, pleaded guilty and then testified in behalf of the Commonwealth.  Giacomazza and Nickerson, hereinafter referred to as the defendants, have appealed and have alleged various assignments of error.

One Thomas, an attendant at a gasoline filling station in Melrose, was shot at about 11:30 o'clock on the night of September 9, 1940, by two men who entered the station to rob him.  His right wrist was fractured by a thirty-two caliber bullet which was fired from an automatic pistol by one who stood in front of a desk at which Thomas was seated when found by the police.  He was also shot in the back by a bullet discharged from a revolver which was fired by one who stood near the door of the toilet.  The bandits escaped without taking the money changer which Thomas wore attached to a belt.  Shortly after the shooting Thomas telephoned to the police.  They arrived within a few minutes.  Thomas's revolver was on the desk where he sat.  It had not been fired.  The money changer was also on the desk.  It was covered with blood.  There were blood spots upon the desk, on the floor near the desk, and on the wall under the telephone.  Thomas was removed to the hospital where he died on October 30, 1940.  The bullet that had fractured the wrist was found by the police upon the floor of the filling station.  They also found the cartridge shell of this bullet.  The revolver bullet was removed from the body of Thomas after his death.  These two bullets and the cartridge shell were exhibits at the trial.

There was testimony that Lenehan while driving in his automobile with two friends met Nickerson, who got in the automobile.  After driving his friends home, Lenehan drove with Nickerson to a pool room in Malden, where Nickerson found Giacomazza.  Lenehan and these two defendants started out for a ride.  He drove past the filling station and

stopped on account of the traffic lights; he intended to turn
to his left to go to Malden. Giacomazza ordered him to go
straight ahead, and after he proceeded a short distance
Giacomazza ordered him to stop and wait for them. Gia-
comazza had an automatic pistol. Both defendants left the
automobile and proceeded toward the filling station. Lene-
han, who remained in the automobile, heard two shots and
started the motor of the automobile. In a few minutes,
both defendants appeared, Giacomazza having an auto-
matic pistol in his hand and Nickerson a revolver. There
was a smell of burnt powder which apparently came from
the weapons. Lenehan was told to go ahead as they had
shot a man when he refused to give them his money. Lene-
han had gone but a short distance when the two defendants
left the automobile at a railroad underpass and disappeared.
Lenehan then continued to operate his automobile but his
supply of gasoline was exhausted before he had gone very
far. Miss Cadigan, a nurse, while on her way home from
work, saw him pushing his automobile and with her auto-
mobile pushed Lenehan's automobile to two filling stations,
which were closed, and then took him in her automobile to
enable him to get some gasoline. She innocently drove him
to the station where Thomas had been shot, but a police
officer who knew her but did not know Lenehan said the
station was closed as a man had been shot. She finally
drove him to a station where he secured some gasoline and
where she left him.

In the middle of October, 1940, Nickerson called at
Lenehan's home. Lenehan drove his automobile, accom-
panied by Nickerson and one Manookian, to Nickerson's
home where Nickerson entered and brought out a bundle
wrapped in a cloth. Nickerson said he wanted to get rid
of the guns as Giacomazza might do something else. Nick-
erson inquired where there was a body of deep water where
he could dispose of the bundle. Lenehan suggested the
Charles River basin and drove over the Harvard Bridge
and parked his automobile in an alley on the Boston side
of the river. Nickerson took the bundle and with Lenehan
walked to the middle of the bridge and dropped the bundle

over the downstream side of the bridge.   Lenehan later
pointed out to the police where the bundle was thrown from
the bridge.   A diver subsequently found a forty-five caliber
automatic pistol and the barrel and frame of a thirty-two
caliber revolver at about the place that Lenehan had indi-
cated.   This barrel and frame were introduced at the trial.
The ballistic experts for both the Commonwealth and the
defendants testified that the appearance of the bullet taken
from the body of Thomas was consistent with its having
been discharged from this barrel.

The defendants contend that there were various errors of
law committed in the course of the trial, but they rely prin-
cipally upon their contention that the Commonwealth has
not shown that the death of Thomas was caused by the
shooting and that, if it was, then the evidence was insuffi-
cient to prove that either defendant was involved in the
murder.

The first assignment of error claimed by each of the de-
fendants was to the denial of his motion for further particu-
lars.   The indictment alleged that the defendants on Sep-
tember 9, 1940, at Melrose, did assault and beat Thomas
with intent to kill and murder him and that by such assault
and beating did kill and murder Thomas.   In answer to
motions for particulars the Commonwealth specified that
the alleged crime was committed at the Shell Filling Station
in Melrose, by the use of firearms, and that Thomas died at
the Melrose Hospital on October 30, 1940, at about 7:25 P.M.
The judge further ordered that counsel be furnished with a
copy of the hospital record.   The motions for particulars
sought information as to the exact location in the building
where the crime was committed, a description of the weapon
used by any defendant, the nature of the assault, the num-
ber, type and location of the wounds inflicted upon Thomas,
the cause of his death, what acts the defendants com-
mitted, and various other matters as to the most minute
details of the crime.

The indictment was in the form prescribed by G. L. (Ter.
Ed.) c. 277, § 79.   It was sufficient properly to charge the
defendants with the commission of murder in the first degree.

*Commonwealth* v. *Jordan,* 207 Mass. 259, 267. *Commonwealth* v. *DiStasio,* 294 Mass. 273, 279. *Commonwealth* v. *Bartolini,* 299 Mass. 503, 509. The defendants were entitled to particulars as a matter of right only if the indictment did not fully, plainly, substantially and formally describe the crime or if such particulars were necessary in order to enable the defendants to prepare their defence or to give them and the court reasonable knowledge of the nature and the grounds of the offence. *Commonwealth* v. *Ellis,* 207 Mass. 572, 576. *Commonwealth* v. *Anderson,* 245 Mass. 177, 184. *Commonwealth* v. *Hayes, ante,* 21. *Commonwealth* v. *Mannos, ante,* 94. The indictment, construed with the bill of particulars, set forth the material and essential facts of the alleged crime so definitely and concretely that the defendants could not fail to understand the conduct upon their part that the Commonwealth charged constituted the offence. The bill of particulars should not be made to perform the functions of answers to a set of interrogatories nor employed for the purpose of compelling a disclosure by the Commonwealth of all the material evidence upon which it intended to rely for a conviction. *Commonwealth* v. *Lammi,* 310 Mass. 159. *Commonwealth* v. *Hayes, ante,* 21. *Commonwealth* v. *Mannos, ante,* 94. The defendants had secured all the benefit they were entitled to as a matter of right from the bill of particulars already filed by the Commonwealth, and whether further particulars should be furnished was a matter resting in the sound discretion of the trial judge. The defendants' assignments of error to the denial of their motions for further particulars are without merit. *Commonwealth* v. *Anderson,* 245 Mass. 177. *Commonwealth* v. *St. John,* 261 Mass. 510. *Commonwealth* v. *Lombardo,* 271 Mass. 41. *Commonwealth* v. *Bartolini,* 299 Mass. 503. *Commonwealth* v. *Martin,* 304 Mass. 320. *Dolan* v. *Commonwealth,* 304 Mass. 325.

The second assignment of the defendant Giacomazza is to the denial of a motion seeking, among other things, that he be furnished with a transcript of the evidence presented to the grand jury and a copy of a confession made by Lene-

han.  The judge granted the remaining portions of this motion by ordering the district attorney to permit an inspection by the defendants' experts of all weapons and bullets that the Commonwealth alleges were used by either defendant in the commission of the crime, and by ordering that copies of the report of the autopsy or the report of any medical examiner of any examination made of Thomas be furnished by the district attorney to counsel for the defendants.  The defendants were also to have copies of the hospital record of Thomas.  There is no statutory provision requiring the district attorney to furnish the defendants with a transcript of the evidence given before the grand jury, or to give the defendants a copy of the confession. This defendant cites no authority in support of the motion. In this Commonwealth the law is settled adversely to the defendant's contention.  *Commonwealth* v. *Jordan*, 207 Mass. 259, 265.  *Commonwealth* v. *Goldberg*, 212 Mass. 88, 91.  *Commonwealth* v. *Gettigan*, 252 Mass. 450, 464.  *Commonwealth* v. *Gedzium*, 261 Mass. 299, 309.  *Commonwealth* v. *Bartolini*, 299 Mass. 503, 507.

The third assignment of error of Giacomazza and the second assignment of Nickerson are based upon the denial of their motions for directed verdicts of not guilty.  The defendants contend that the Commonwealth has not proved that Thomas died as a result of the shooting and, second, that if he died in consequence thereof, then the evidence is insufficient to prove that the murder was committed by them.

Thomas was steadily employed at the filling station from eleven o'clock at night until seven o'clock on the next morning from May, 1937, until the date of the shooting. There was evidence that he did not lose any time during this period on account of illness.  He was seventy-four years of age.  He was described as a large man of rugged appearance.  His condition while at the hospital was set forth in considerable detail by the hospital record, and it was amplified by the testimony of the attending physician. There was evidence that the bullet that had entered the back had chipped off the end of the twelfth rib and had

proceeded toward the front of the body, without damaging any organ, until it finally lodged on the inside of the abdominal wall, where it caused an abscess to form which at the time of the autopsy contained eight ounces of pus. According to the attending physician, the condition of the wounds was such that after the first two weeks he did not anticipate any further trouble from them. In his opinion, the strain caused by the wounds resulted in his "gradual petering out, his increasing disability until he finally died," and the bullets had started him on a down grade "to such an extent that he was unable to come back." The hospital record described the cause of death as due to coronary thrombosis, arteriosclerosis and gunshot wounds of right forearm and left back. The medical experts for the Commonwealth attributed the death of Thomas to the shooting, which started a series of events that progressed uninterruptedly until it brought about his death. On the other hand, the experts for the defendants were of the opinion that the results due to the shooting had spent their force long before his death and that his demise was due entirely to natural causes which arose from the physical ailments with which he was afflicted prior to the shooting. It was for the jury to say whether the relation between cause and effect had been proved between the shooting and the death. They could warrantably find upon all the testimony that the shooting generated a destructive force upon one so handicapped by physical infirmities that he was unable to withstand the ravages of such a force, and that the infliction of the wounds was the proximate cause of the death. If such a finding were made, the shooting as matter of law was the cause of death. "If a person inflicts a wound with a deadly weapon in such manner as to put life in jeopardy, and death follows as a consequence of this felonious and wicked act, it does not alter its nature or diminish its criminality to prove that other causes coöperated in producing the fatal result." *Commonwealth* v. *Hackett*, 2 Allen, 136, 142. *Commonwealth* v. *M'Pike*, 3 Cush. 181. *Commonwealth* v. *Fox*, 7 Gray, 585, 586. *Commonwealth* v. *Randall*, 260 Mass. 303.

The defendants contend that the evidence was insufficient to prove that they were the persons who committed the assault upon Thomas. If the jury believed the testimony of Lenehan, they could come to no conclusion other than that the defendants shot Thomas. Lenehan was an accomplice and the jury were so instructed. Although a conviction may be had in this Commonwealth upon the uncorroborated testimony of an accomplice, *Commonwealth* v. *Holmes*, 127 Mass. 424; *Commonwealth* v. *Leventhal*, 236 Mass. 516; *Commonwealth* v. *DiStasio*, 294 Mass. 273; *Commonwealth* v. *Lammi*, 310 Mass. 159, the judge instructed the jury, as is frequently done, that they should carefully scrutinize the testimony of Lenehan. *Commonwealth* v. *Bishop*, 165 Mass. 148. *Commonwealth* v. *Phelps*, 192 Mass. 591. *Commonwealth* v. *Leger*, 264 Mass. 217.

In view of the fact that these defendants now have the right by virtue of G. L. (Ter. Ed.) c. 278, § 33E, as amended by St. 1939, c. 341, to have the entire evidence examined by this court and to secure a new trial if this court is satisfied that the verdicts were against the law or the weight of the evidence, it is proper to state, notwithstanding the principle that the corroboration of an accomplice is not essential to a conviction, that these verdicts do not appear to rest entirely upon the uncorroborated testimony of an accomplice — Miss Cadigan saw Lenehan a short distance from the filling station within a few minutes after the commission of the crime; Lenehan and Nickerson were together when the guns were thrown into the Charles River; Lenehan pointed out to a police officer the place where the guns were thrown overboard and thereafter a pistol and the parts of a revolver were found there by a diver; Manookian accompanied Nickerson and Lenehan on the trip when the guns were thrown into the river; Lenehan wrote Manookian to have the latter say that Lenehan was with him on the night of September 9, 1940; and finally, when apprehended, Nickerson told the police that he was at the filling station on the night of the murder and supposed he had left finger prints in the toilet, although he immediately changed his story and said he was in the toilet there in the

afternoon and not upon the night of the crime. Indeed, the defendants do not contend that Lenehan was not in the vicinity of the filling station at about the time Thomas was shot. They did not deny that Lenehan was implicated in the crime, but urged the jury to find that others than themselves were with him. It is clear without a further review of the evidence that verdicts of not guilty could not have been directed. *Commonwealth* v. *Snyder*, 282 Mass. 401. *Commonwealth* v. *Bartolini*, 299 Mass. 503. *Commonwealth* v. *Green*, 302 Mass. 547.

The fifth assignment of error of Giacomazza and the third assignment of Nickerson are based upon the admission of the testimony of Manookian that Lenehan had told him that Nickerson and Giacomazza had instructed Lenehan to stop his automobile a short distance from the filling station; that both Nickerson and Giacomazza then left Lenehan's automobile; that they then returned to the automobile and told Lenehan they had shot a man and to drive away from the scene, which Lenehan did. Before this evidence was introduced, the judge instructed the jury that the evidence could not be considered as against Giacomazza or Nickerson, but that it could be considered only against Lenehan. This ruling was correct. *Commonwealth* v. *Borasky*, 214 Mass. 313. *Commonwealth* v. *Millen*, 289 Mass. 441. The effect to be given to a statement by one defendant outside of court in the absence of the others was also fully explained to the jury in the instructions, and they were specifically told that such a statement by one defendant could not be considered against any other defendant. The evidence when admitted was competent against Lenehan, who was then on trial with the two remaining defendants. The rights of these two defendants were safeguarded by the express instructions given before the evidence was introduced and later in the charge to the jury. It must be assumed that the jury followed the instructions of the judge and disregarded this testimony as against these defendants. *Commonwealth* v. *Cline*, 213 Mass. 225. *Commonwealth* v. *Morrison*, 252 Mass. 116. *Commonwealth* v. *Capalbo*, 308 Mass. 376.

The sixth assignment of error of Giacomazza and the fifth assignment of Nickerson challenge the action of the judge in permitting Lenehan, in the presence of the jury and during the trial, to retract his plea of not guilty and to enter a plea of guilty to the indictment charging him with being an accessory after the fact to the murder of Thomas. The defendants contend that they were thereby prejudiced. Whether the plea of Lenehan was accepted in the presence or absence of the jury, the fact that he had pleaded guilty could hardly have been kept from the jury. Of course, the jury could have been instructed that they need not further consider the indictment against Lenehan, but such a course might lead to speculation upon the part of the jury which might influence them for or against the two remaining defendants. In view of the subsequent appearance of Lenehan as a witness for the Commonwealth, it was to be expected that his transition from defendant to witness would be attacked upon cross-examination and an attempt would be made to impugn his credibility upon the ground that some advantage would accrue to him by pleading guilty and testifying as a witness for the Commonwealth. In fact, both these courses were pursued at the trial. The decision to accept the plea in the presence of the jury was within the discretion of the judge. He instructed the jury that they were entitled to know that the prosecution against Lenehan had terminated by a plea of guilty but that his plea was not to be considered in any way as evidence against these two defendants, and they should dismiss from their minds any thought that the plea might create as to the truth of the facts alleged in the indictment charging these defendants with murder. These assignments of error are untenable. *Commonwealth* v. *Thompson,* 99 Mass. 444. *Commonwealth* v. *Bishop,* 165 Mass. 148. *Commonwealth* v. *Borasky,* 214 Mass. 313. *Commonwealth* v. *Fuller,* 260 Mass. 329. *Commonwealth* v. *Millen,* 289 Mass. 441.

The seventh assignment of error of Giacomazza is to the admission of a written statement of Lenehan given to the police on May 13, 1941. This defendant contends that

this statement was used by the Commonwealth simply to refresh the recollection of Lenehan and that it did not thereby become competent evidence. The statement was first offered by the district attorney at the close of the cross-examination of Lenehan by counsel for both defendants. The judge then excluded the statement because, as he stated, it had not been used in cross-examination and the witness had not been contradicted by anything purporting to be contained in the statement. The judge then inquired if counsel intended to argue that Lenehan's testimony was a recent fabrication, and one of the counsel replied that he did not intend to argue that it was more recent than the date of the statement. The ruling excluding the statement at this stage of the trial was right. *Capodilupo* v. *F. W. Stock & Sons*, 237 Mass. 550. *Renwick* v. *Eastern Massachusetts Street Railway*, 275 Mass. 145. *Ouellette* v. *Chapman*, 284 Mass. 363. *Shear* v. *Rogoff*, 288 Mass. 357. The district attorney then used the statement to refresh the recollection of Lenehan as to a statement made by Nickerson in reference to using the toilet in the filling station, and counsel for Nickerson cross-examined Lenehan concerning this incident. We need not decide whether the statement or a portion of it could have then been shown to the jury to determine whether the recollection of the witness could have been refreshed by what he had been shown in the statement by the district attorney, because neither party requested that any portion of it should be inspected by the jury. *Dugan* v. *Mahoney*, 11 Allen, 572. *Commonwealth* v. *Haley*, 13 Allen, 587. *Commonwealth* v. *Jeffs*, 132 Mass. 5.

The cross-examination of Lenehan was resumed by counsel for Nickerson. This examination covered a broad scope concerning several matters contained in the statement. Various portions of the statement were quoted and furnished the basis for questions put to the witness. Counsel for Giacomazza conferred with counsel for Nickerson while the latter conducted this cross-examination, and made no objection. The judge, as shown by the record, understood that counsel for both defendants were acting in concert.

The purpose of this cross-examination was not to refresh the recollection of Lenehan. It was an attempt to show discrepancies between this statement and his testimony. At the close of this cross-examination the judge admitted the statement and instructed the jury that it was not evidence of the truth of anything that was contained therein, but that they might consider it as bearing upon the credibility of Lenehan. Nickerson took no exception to this ruling and the statement, therefore, became a part of the evidence at the trial. It could not have been excluded upon the objection of a codefendant. The point could properly have been raised by the codefendant by a request that the judge instruct the jury that the statement was not admissible against him. A general exception by one party to the admission of evidence that is competent for any purpose against another party then on trial cannot be sustained. If the excepting party believed that the evidence was inadmissible as to him, then he should have specifically requested that the evidence be so limited as not to apply to him. *Williams* v. *Taunton,* 125 Mass. 34. *Produce Exchange Trust Co.* v. *Bieberbach,* 176 Mass. 577. *Solomon* v. *Dabrowski,* 295 Mass. 358. *Curtin* v. *Benjamin,* 305 Mass. 489. *Commonwealth* v. *Connolly,* 308 Mass. 481.

We prefer to deal with the question as if it were open and upon a broader ground. Lenehan had appeared as a witness for the Commonwealth, and his purpose and motives in pleading guilty and becoming a witness were assailed. He was asked if he would waive his privilege and have his counsel testify what arrangements, if any, were made between him and the district attorney in pursuance of which Lenehan had become a witness. It was the contention of the Commonwealth that the revolver that discharged the bullet that struck Thomas in the back was fired by one who was near the door of the toilet. It became material to show that Nickerson was at that place at the time of the shooting. Lenehan, however, had not testified that Nickerson had said anything about going to the toilet until the written statement was shown to him on redirect examination, when, after looking at the statement, he testified that

Nickerson had said that he desired to go to the toilet when they were at an open air theatre. The statement made no mention of Nickerson making any such remark while at the theatre, but it did disclose that Nickerson made some mention of the toilet when he left the automobile just before the shooting, although it also appears from the statement itself that Nickerson made no mention of the toilet until, according to the testimony of Lenehan, he told him two weeks after the shooting. It is unnecessary to compare further Lenehan's testimony with his statement because we cannot, in determining the admissibility of the statement, deal merely with contradictions and ignore the nature and purport of the cross-examination of Lenehan, the course and atmosphere of the trial, and the position he took at the trial. He had pleaded guilty to being an accessory after the murder of Thomas, but he had not been sentenced. He still stood charged with the murder of Thomas in the indictment upon which the two defendants were on trial. Not only was this indictment pending against him, but Lenehan and the two defendants had been jointly indicted shortly before the trial for an assault with intent to murder Thomas. No one would hesitate to inquire if the testimony of such a witness was not the product of the circumstances in which he found himself; and when contradictions appeared which might readily lead one to believe that his testimony was fabricated to suit better his purpose as a witness for the Commonwealth, it should in these circumstances be open to the Commonwealth to show that his testimony was unaffected by his change from a defendant to a witness — an incident which counsel for Giacomazza describes in his brief as "stage-play." We are of opinion that, at the time the statement was admitted, and without passing upon the reasons stated by the judge for its admission, enough appears from the record to give rise to a reasonable inference by the jury that material portions of his testimony were a recent invention, or that he had put himself in such a situation that he was prompted to testify in a particular way, and that there was no reversible error in admitting the statement. *Commonwealth* v. *Jenkins,* 10 Gray, 485.

*Clark* v. *Fletcher,* 1 Allen, 53. *Griffin* v. *Boston,* 188 Mass. 475. *Commonwealth* v. *Tucker,* 189 Mass. 457. *Commonwealth* v. *Marshall,* 211 Mass. 86. *Commonwealth* v. *Retkovitz,* 222 Mass. 245. *Walsh* v. *Wyman Lunch Co.* 244 Mass. 407. *Commonwealth* v. *Hoyt,* 279 Mass. 400.

The eighth assignment of error of Giacomazza and the sixth assignment of Nickerson are to the admission in evidence of the bullet and shell found at the filling station after the shooting. The ninth assignment of Giacomazza and the seventh of Nickerson are based upon the admission in evidence of Thomas's revolver, which was found by the police upon the desk at the filling station. The tenth assignment of Giacomazza and the eighth of Nickerson attack the admission in evidence of the bullet that was removed from the body of Thomas. The fourteenth assignment of Giacomazza and the twelfth of Nickerson challenge the introduction in evidence of the barrel and frame of the revolver that were found in the Charles River. This barrel and frame could have been found to have been dropped into the river by Nickerson. It is enough to say, without discussing each of these exhibits, that there was testimony showing the custody of each from the time it was found by the police, the medical examiner, or the diver, as the case may be, until it was produced at the trial. We cannot say that any of these articles had not been properly verified before it was introduced in evidence. There was no error in the ruling of the judge in admitting them in evidence. Articles found at the scene of a crime or in the home of a defendant, or which can be traced to the possession of a defendant and are material to an issue, have been frequently admitted in evidence. *Commonwealth* v. *Tibbetts,* 157 Mass. 519. *Commonwealth* v. *Best,* 180 Mass. 492. *Commonwealth* v. *Retkovitz,* 222 Mass. 245. *Commonwealth* v. *Russ,* 232 Mass. 58. *Commonwealth* v. *Gangi,* 243 Mass. 341.

Captain Van Amburgh, a ballistic expert, testified that he made an examination of the bullet that was taken from the body of Thomas; that he had made a photograph of a bullet fired through the barrel of the revolver found in the river; that immersion for five months in the river had

destroyed the little blemishes which were in the barrel due to a slightly imperfect cutting tool and are present in all firearms, but that the marks of the rifling in the inside of a barrel of a revolver of this manufacture would not be changed by its immersion in water for five months. Subject to exceptions, he was permitted to testify that he was of the opinion from his tests, studies and examinations that the bullet that came from the body of Thomas could have been fired through the revolver barrel that was found in the river, and that it was consistent that this bullet could have been so fired. He then gave detailed reasons for his opinion. He further testified that he photographed a bullet that was fired through this barrel and superimposed a photograph of that bullet over a photograph of the bullet that had come from the body of Thomas, making a composite photograph so that a comparison could be easily made of both bullets. This composite photograph was then introduced in evidence over the exceptions of the defendants. The admission of this oral testimony and the photograph is the basis of the eleventh, twelfth and thirteenth assignments of error of Giacomazza and the ninth, tenth and eleventh assignments of error of Nickerson. The opinion of the expert was properly admitted. *Commonwealth* v. *Best,* 180 Mass. 492. *Commonwealth* v. *Millen,* 290 Mass. 406. The judge could find that the photograph was a fair representation of the bullets and that it might aid the jury in understanding the issues. It was for the jury to determine what weight they should give to it. We perceive no error in the ruling admitting the photograph. *Blair* v. *Pelham,* 118 Mass. 420. *De Forge* v. *New York, New Haven & Hartford Railroad,* 178 Mass. 59. *Commonwealth* v. *Tucker,* 189 Mass. 457. *Howe* v. *Boston, ante,* 278.

The fourth assignment of error of Nickerson attacks a ruling prohibiting him from inquiring of the witness Manookian if the police had questioned him concerning a murder committed in Everett. The ruling was right in excluding a matter collateral to any issue then on trial. *Commonwealth* v. *McDermott,* 255 Mass. 575, 580. *Commonwealth* v. *Lammi,* 310 Mass. 159, 163.

The thirteenth assignment of error of the defendant Nickerson is to a question put by the Commonwealth to a medical expert, called by this defendant, as to whether it would be necessary for the medical examiner to examine the hospital records if the attending physician was present at the autopsy conducted by the medical examiner and gave the latter all the information that he had about the case. The objection is that there was no evidence that the attending physician gave the medical examiner the said information. The answer was that it was not necessary if the attending physician conveyed to the medical examiner all that was contained in the hospital records. It is hard to see how this defendant was harmed when the answer itself was made expressly conditional upon the possession of the information which the medical examiner did not have. Moreover, there was testimony that the attending physician was present at the autopsy and gave his diagnosis of the case to the medical examiner. The ruling was free from reversible error. *Arnold* v. *Harrington Cutlery Co.* 189 Mass. 547. *Taylor* v. *Creeley,* 257 Mass. 21, 27. *Sullivan* v. *Brabason,* 264 Mass. 276, 288.

The fifteenth assignment of error of Giacomazza and the fourteenth assignment of Nickerson challenge the ruling of the judge permitting a medical expert to testify to matters in chief after the defendants had rested. The order in which evidence may be introduced is a matter of discretion. It is plain there was no error. *Commonwealth* v. *Hogan,* 249 Mass. 555. *Commonwealth* v. *Wood,* 302 Mass. 265. *Commonwealth* v. *Cohan,* 307 Mass. 179.

There is nothing in the sixteenth assignment of error of Giacomazza relative to the action of the judge in permitting a leading question to be put by the Commonwealth in direct examination of a medical expert. There was no abuse of discretion. *Commonwealth* v. *Dorr,* 216 Mass. 314. *Commonwealth* v. *Simpson,* 300 Mass. 45.

The remaining assignments of error, which include the fourth claimed by Giacomazza and the fifteenth claimed by Nickerson, are to the denial of motions for a new trial. The motions recited that the verdicts were against the evidence,

the weight of the evidence and against the law. The defendants introduced no new evidence at the hearing upon the motions but merely reargued the same matters that they urged before the jury. The whole case is here for our determination of the law and the evidence. G. L. (Ter. Ed.) c. 278, § 33E, as amended. We have examined the entire record with care and have fully considered all the contentions made by the defendants. The material facts have already been stated in discussing the denial of the motions for directed verdicts. The evidence amply supports findings that each of these two defendants shot Thomas and that his death resulted from the shooting. We perceive no reversible errors of law. Consequently, we are of opinion that justice does not require a new trial.

*Judgments affirmed.*